# Richmond

ARLINGTON TOWERS LAND CORPORATION v. WALTER P. McFARLAND.

March 5, 1962.

Record No. 5380.

Present, Eggleston, C. J., and Spratley, Whittle, Snead and Carrico, JJ.

*William W. Koontz* and *David L. Carpenter (Ryland, Winston & Carpenter; Boothe, Dudley, Koontz & Boothe,* on brief), for the plaintiff in error.

*Caldwell C. Kendrick* and *Dillard L. Laughlin (Jesse, Phillips, Kendrick & Gearheart,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

■ This action was instituted by the plaintiff, Walter P. McFarland, against the defendant, Arlington Towers Land Corporation, for $19,791.65 and interest, which he claimed was due him as the balance on the salary which the defendant had contracted to pay him. The defendant answered that if there was such an agreement it was "superseded and mutually novated" by a later contract between the plaintiff and George S. Gregory, subsequent purchaser of the capital stock of the defendant. The case was heard by the court without a jury, judgment was given for the plaintiff, and the defendant appeals.

Defendant contends that certain written agreements dated April 15, 1957, between the plaintiff and Gregory on their face constituted a novation of the plaintiff's employment contract; and if not, then said agreements, together with the oral and additional documentary evidence constituted such novation.

Plaintiff assigned cross-error and argues that the Gregory contract on its face did not constitute a novation and that the court erred in admitting parol evidence to explain that contract or to show a mutual termination of the employment contract. Prior to the introduction of oral testimony both parties made motions for summary judgment (Rule of Court, § 3:20), which were denied.

The defendant, Arlington, was engaged in the construction and operation, through its subsidiaries, of apartment buildings in Arlington county. McFarland was formerly its president and directed and supervised the development of the project. He owned 50% of Arlington's capital stock and his two associates, Johnson and Loughran, owned equally the other 50%. The three together are referred to in the record as the McFarland Group.

In March, 1957, a creditor, McShane, obtained a judgment against the defendant for approximately two million dollars, which the defendant could not pay. To obtain funds to meet the needs of the company, the McFarland Group entered into three written agreements with persons referred to as the Kaufmann Group. These agree-

ments were all dated April 1, 1957, and consisted of a Main Agreement, which provided for the purchase by the Kaufmann Group of all the existing stock of Arlington, and certain stock and debentures to be issued by it; a Call Agreement, providing a right to the McFarland Group to repurchase all the stock and debentures within a year from April 1, 1957; and a Memorandum Agreement, which provided for the return of operating control of defendant to the McFarland Group prior to the exercise of the Call Agreement on stated conditions.

The Memorandum Agreement provided, *inter alia*, in paragraph 3 (a) that the Kaufmann Group would cause Arlington to employ the plaintiff McFarland for the period of one year from April 1, 1957, "as consultant to the management" of Arlington at a salary of $25,000 per year payable in semi-monthly installments, plus the right to occupy his apartment rent free. Accordingly the Board of Directors of Arlington, at a meeting on April 3, 1957, directed the president of the company to employ McFarland "as consultant to the management" on said terms, which was done and his salary was paid until June 15, 1957, in the total amount of $5,208.35, when the payments stopped. Plaintiff testified that he was called on by the management for consultation services on one occasion after June 15 and was ready to perform his contract for the balance of the year.

By the Memorandum Agreement the Kaufmann Group also contracted to cause Arlington to permit Loughran to occupy his apartment rent free for a year; to employ Joseph J. McCarthy (an attorney previously serving the defendant) for one year at $14,000; to continue the employment of Saurine and Ragan (then employed by defendant) for one year at the present rate of compensation, to render such services as the Board of Directors might require; to elect the plaintiff or his designee for one year as a director of defendant with complete access to all corporate books and records; and if the call to repurchase defendant's stock and debentures was not exercised in accordance with its terms, plaintiff and Loughran would pay rent after April 1, 1958.

In addition to negotiations with the Kaufmann Group the plaintiff had also, during March 1957, been in negotiations with George S. Gregory, and these negotiations resulted in two contracts between Gregory and the McFarland Group, both dated April 15, 1957, one called the Gregory Main Agreement and the other the Gregory Memorandum Agreement.

By the Main Agreement Gregory was given the option, until May 15, 1957: (1) to give a commitment to lend the McFarland Group $1,375,000 in time for the McFarland Group to exercise the Kaufmann Call (to repurchase the Arlington stock and debentures), to be repaid thirteen months thereafter; (2) to give a commitment to lend the plaintiff McFarland $250,000 to be paid to him at times and on conditions stated; and (3) to enter into a Call Agreement (Gregory Call) giving Gregory the option to purchase the interest of the McFarland Group in Arlington within thirteen months after their exercise of the Kaufmann Call at a stated price.

It was stipulated in the record that Gregory and his associates (called the Gregory Group) took control of Arlington on or about June 11, 1957.

The Gregory Memorandum Agreement, dated April 15, 1957, as stated, was between Gregory and the McFarland Group. It recited the agreements set forth in the Gregory Main Agreement; recited that the parties had reached "certain other understandings" which they desired to set forth in the Memorandum Agreement, which it had been determined would "induce the McFarland Group to use their best efforts and take such action as is necessary to increase the income and reduce the expenses of Arlington and its Subsidiaries," as defined in the Main Agreement.

The Memorandum Agreement then proceeds to set forth in eleven numbered paragraphs what Gregory and the McFarland Group agree to, only the following of which, numbered as in the Agreement, have any bearing on the issue in this case:

(1) Three numbered apartments shall be leased to McFarland, Johnson and Loughran for ten years, rent free, with provision for earlier termination;

(2) McFarland to be given an option during a period of ten years to purchase from Arlington the furniture in his apartment at $1,000;

(3) Arlington shall retain the services of said Joseph B. McCarthy for a period of five years at an annual salary of $14,000;

(5) "McFarland shall use his best efforts to help Arlington and its Subsidiaries achieve success in improving their income and reducing their expenses";

(6) If a plot of land called the "C Ground" is sold or developed and leased, McFarland shall receive 50% of amounts in excess of stated sums;

(7) If within 39 months from April 15, 1957, the Gregory Group

sells all the stock and debentures of Arlington at a net profit of more than $1,500,000 above the investment of the Gregory Group, McFarland shall have 25% of such excess of net profit;

(10) This agreement shall be void and none of the parties have any liability if the Gregory Group does not exercise its option (to purchase) under the Main Agreement, or does exercise its option and the McFarland Group fails to fulfill the conditions specified in paragraph 3 of the Main Agreement (to give notice of its intention to exercise its McFarland Group Call and put the Gregory Group in control).

Defendant argues that there was no essential change in the plaintiff's duties and obligations under the Gregory Agreement of April 15, 1957, from his duties as consultant under the Kaufmann Agreement of April 1, 1957; that the Gregory Agreements substituted a completely new and more valuable set of promises in the place of those contained in the Kaufmann Agreements, and show on their face that they are the "complete, final and total benefits to be derived by the McFarland Group from defendant to the exclusion of any others".

The best way, of course, to have a contract show on its face what was intended is to write it in the contract. The salary the plaintiff was to receive was stipulated in the Kaufmann Agreements and provided for by a resolution of the Board of Directors of the defendant company which has never, so far as the record shows, been rescinded or modified. The Gregory contract relied on by the defendant to effect a novation of and to supersede defendant's contract with the plaintiff is a contract made afterwards by the plaintiff with a different party, having different terms and providing for different results. It made no reference to doing away with the salary contract made by the defendant's Board of Directors with the plaintiff. To the contrary, a copy of the Kaufmann Memorandum Agreement containing the provision for the payment by the defendant to the plaintiff of a salary of $25,000 was attached to and made a part of the Gregory Main Agreement.

There are differences in the plaintiff's duties and benefits under the contracts, as may be seen from the references above; but the fact that, aside from the salary agreement, the terms of the agreement between Gregory and the McFarland Group are more favorable to the plaintiff than those of the contract between Kaufmann and the McFarland Group cannot serve to create a novation of defendant's agreement

with the plaintiff and to relieve the defendant of its promise to the plaintiff.

A novation is a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of a debtor or another, or a like agreement for the discharge of a debtor to his creditor by the substitution of a new creditor. 39 Am. Jur., Novation, § 2, p. 255; § 17, p. 262; 66 C.J.S., Novation, §§ 2-4.

" 'In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed.' " *Wright* v. *Shortridge*, 194 Va. 346, 354-5, 73 S. E. 2d 360, 366. *State Bank* v. *Domestic, &c., Co.*, 99 Va. 411, 418, 39 S. E. 141, 143; 66 C.J.S., *supra*, § 18 at p. 703; 39 Am. Jur., *supra*, § 21, p. 266.

To establish novation the proof must be clear and satisfactory. 39 Am. Jur., *supra*, §§ 33-4, pp. 272-3; Anno., 61 A.L.R. 2d 769.

It is entirely clear that the Gregory Agreements do not constitute as a matter of law a novation of the contract of employment made by the defendant with the plaintiff. The Gregory Memorandum Agreement, as stated, makes no reference to such a purpose, nor does it necessarily imply an agreement by the plaintiff that it shall accomplish such a purpose. To the contrary, the Gregory Main Agreement, as stated, attaches and makes a part of that agreement a copy of the Kaufmann Memorandum Agreement with its specific obligation to cause the defendant to employ the plaintiff at the stated salary. The Gregory agreements are more an affirmance of the defendant's obligation to the plaintiff than a novation of that obligation and on the basis of the written agreements alone the plaintiff would have been entitled to a summary judgment against the defendant.

■ However, in its answer to the plaintiff's motion for judgment the defendant alleged that on or prior to June 15, 1957, plaintiff had agreed and consented to the termination of his employment and compensation by the defendant. In its answer to the plaintiff's motion for summary judgment it repeated that allegation and further alleged that the amount of damages was in dispute. In denying plaintiff's, as well as defendant's, motion for summary judgment the court held that evidence might be introduced to explain the Gregory contracts and to show a mutual termination of the employment contract and a waiver by the plaintiff of his rights, as well as mitigation of damages.

Mitigation of damages was an affirmative defense, *Paddock* v. *Mason*, 187 Va. 809, 818, 48 S. E. 2d 199, 203, and defendent offered no evidence to sustain its burden of proof.

The defendant introduced evidence to the effect that in the course of the preparation of the Gregory Agreements the plaintiff agreed that the Gregory Agreements were setting forth new provisions dealing with new rights to the McFarland Group and that these rights were to take the place of the rights conferred by the Kaufmann Agreements, including plaintiff's salary contract; and also introduced evidence to the effect that even after plaintiff instituted this action he stated that he understood that his salary was to cease. This testimony was specifically contradicted and denied by both the plaintiff and Joseph B. McCarthy.

The court heard this testimony *ore tenus* and at its conclusion was, as stated in its memorandum, "definitely of the opinion that the defendant did not carry the burden of proof." That finding is conclusive here, *Smith* v. *Board of Supervisors*, 201 Va. 87, 91, 109 S. E. 2d 501, 505; 1 Mich. Jur., Appeal and Error, § 276, p. 705, and if some of the testimony was inadmissible, the error was harmless and plaintiff's assignment of cross-error need not be discussed.

On the record before us the defendant has not established any novation of the defendant's agreement to pay the plaintiff his salary and he is entitled to recover the unpaid balance thereof as he has alleged.

The judgment appealed from is

*Affirmed.*