**BOSTON FISH MARKET CORPORATION, Respondent, Appellant,**

v.

**UNIVERSAL INSURANCE COMPANY, Libellant, Appellee.**

**No. 6978.**

United States Court of Appeals First Circuit.

Jan. 24, 1968.

John J. C. Herlihy, Boston, Mass., for appellant.

Robert J. Hallisey, Boston, Mass., with whom Thomas H. Walsh, Jr., and Bingham, Dana & Gould, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is a libel in admiralty[1] to recover for damage to the fishing vessel Terra Nova and its contents as the result of a fire that occurred aboard the vessel on June 26, 1964, while it was berthed at respondent's fish pier in Boston[2] undergoing repairs.

As part of its operation, respondent maintained eight fire hydrants at its pier. Three of these, including Hydrant No. I, which was situated nearest to the Terra Nova, had been previously shut off by the respondent and were not operative on the day of the fire. No notice of this inoperative condition was given to those connected with the vessel or to the Boston Fire Department, nor was this apparent to anyone attempting to use these three hydrants.

On the morning of June 26th a passerby on the pier yelled to one DeVeau, who was working for an independent contractor aboard the Terra Nova, that the vessel was on fire. DeVeau immediately asked him to call the Boston Fire Department. The first fire engine to arrive connected its 2½ inch hose to hydrant No. I but, getting no water,

---

1. Libellant is the subrogee of the owners of the vessel.

2. It was respondent's practice to allow vessels that customarily unload their fish at this pier to lie at the pier between trips without extra charge. The Terra Nova was one of such vessels.

disconnected it and proceeded to the next nearest hydrant that was in working condition. Libellant contends that because respondent did not maintain No. I hydrant in proper working order, the fire department's efforts were substantially delayed; that during this delay the fire grew worse and did much more damage than would otherwise have been done. The ultimate question is whether the respondent is liable for the aggravated damage caused by the delay and, if so, in what amount.

The district court, sitting without a jury, found that the fire started "at or about 10 A.M." and that because of the failure of hydrant No. I to function there was a delay of five to eight minutes, for which it held the respondent liable. It also found that the total damage to the vessel and its contents by reason of the fire was $76,750; that only about 50% of this damage would have occurred "had the fire department not been delayed by hooking to and unhooking from hydrant No. I" and that "the other 50% was due to the delay in getting water from the second hydrant, a delay exclusively caused by the ineffectual effort to get water from hydrant I." Accordingly, the court entered judgment for libellant for one-half of the amount of the total damage, plus interest.[3]

Respondent's first contention on appeal is that the libellant did not show any aggravated damage attributable to inadequacy of water supply beyond mere speculation and conjecture; also, that the trial court's findings with reference thereto are not supported by the evidence.

Briefly, the pertinent evidence is as follows. DeVeau, the workman above mentioned, testified that the fire burned for about twenty-five minutes before the fire department arrived, during which period he applied two fire extinguishers to no avail; that when the first fire truck arrived there was smoke but no flame in the pilot house and by the time the firemen got water on the fire there was smoke, heat and flames extending half way to the top of the pilot house. He also stated that the delay occasioned by the inoperative hydrant was about twenty minutes. This witness did not testify, however, as to the actual time the fire started or was called to his attention.

The fire chief testified that his department received the call for assistance at 10:25 a. m., and that he arrived at the scene about three minutes later. He stated that when he arrived the hose was laid from hydrant No. 1 as far as the pier, and that they were disconnecting at the hydrant because it was inoperative. "I ordered them to shift the line. I would say it would take about a minimum of three minutes to shift that line to the next hydrant, which would make it 10:31." While the witness testified that 5 to 8 minutes elapsed from the time of his arrival to the time water was brought through a large hose to the fire, in the light of this other testimony, and the absence of any direct testimony to that effect, it is not clear that he considered that all of the 5 to 8 minute interval before water was brought to the fire was delay occasioned by the inoperative hydrant. In addition, the chief stated that during this interval in getting water for their regular 2½ inch hose, the firemen used a ¾ inch hose from one of the trucks but the water supply was exhausted in about three minutes and apparently little benefit resulted. He further testified that he observed no change in the fire during this interval except that it got smokier. One Dorgan, a fish pier employee, testified that the pilot house and winch room were both ablaze before the fire department arrived.

Libellant's expert Williams, a professor at the Massachusetts Institute of Technology and a chemical engineer who specializes in combustion, testified as to

---

**3.** Libellant collected $27,500 from Wharf Forging and Welding Company, which was making repairs to the vessel when the fire broke out, in consideration of a covenant not to sue because of the possibility that it would be found liable for starting the fire.

the amount of damage likely to have been caused by the delay. His opinion was not based on personal observation of the vessel but was in answer to a hypothetical question. This question assumed that there was only a five to eight minute delay due to the faulty hydrant but made no mention whatever of how long the fire had been burning before the fire department arrived. He stated explicitly, however, that if the fire had been burning for twenty to twenty-five minutes before the fire department arrived it would be impossible to say what damage was occasioned by the delay; also, that if the fire had been going in the winch room for twenty-five minutes he could not tell how much heat damage had occurred in the pilot house.

Libellant's marine surveyor was asked substantially the same hypothetical question in which the time of the fire department's arrival was also omitted. In cross-examination he acknowledged that he did not know how long the fire had been burning before the fire department arrived and that this knowledge was essential in determining the effect of the subsequent five to eight minute delay.

The most important single question on the issue of aggravated damage is the length of time the fire had been burning before the fire department arrived, or more precisely, what period of time elapsed from the time the fire started to the time when water would have been brought to it if hydrant No. I were functioning. There is no direct testimony as to when this fire started. The nearest approach is DeVeau's estimate that "possibly 25 minutes" elapsed between the discovery of the fire and the arrival of the first fire truck. The fire chief placed this latter time as 10:28 A.M. The trial court, as we have said, found that the fire started "about 10 A.M."

Apart from the ultimate question of whether the court arrived at a proper result in this case, the more immediate one is the adequacy of the court's findings. If the finding that the fire started "about 10 A.M." is to be con-

strued as a mere approximation or as a general introductory description of the occurrence, as libellant suggests, then we think it is imprecise and does not meet the requirements of Fed.R. Civ.P. 52(a). It seems unlikely, however, that an experienced judge would be unmindful of his obligation under this rule and neglect to make a finding on such a vital issue in the case. This view is strengthened by the fact that when libellant's counsel was unable to state the time when the fire was discovered, the court observed: "Well, there certainly is evidence that it was discovered by three minutes after ten." Presumably the court arrived at this figure by deducting DeVeau's estimate of twenty-five minutes from the fire chief's figure of 10:28 A.M.

■ However, a finding that the fire started close to 10 A.M. when applied to the testimony of one of libellant's experts rendered his opinion valueless on his own admission, and at least cast great doubt on the value of the other's. The court, accordingly, either made inconsistent findings or at best inaccurate and inadequate findings. Under these circumstances, we remand the case for a more definite and certain finding by the trial judge on this crucial issue.

■ Also, we think it appropriate to mention two other points raised by respondent's appeal. It complains that the trial court should have considered the matter of depreciation in determining the total amount of damages. Even assuming this to be so, it was encumbent upon respondent to produce evidence on this question. By proving the cost of repair, libellant made a prima facie showing of loss. Since respondent did not then come forward with evidence of depreciation, it cannot now complain that none was allowed. Watsontown Brick Co. v. Hercules Powder Co., 265 F.Supp. 268 (M.D.Pa.1967); Pfingsten v. Westenhaver, 39 Cal.2d 12, 244 P.2d 395 (Sup.Ct.1952); Pasadena State Bank v. Isaac, 149 Tex. 47, 228 S.W.2d 127 (Sup. Ct.1950).

■ The district court did not reach respondent's final contention that the Terra Nova was merely a licensee because it found that the respondent's liability here did not turn on the matter of status. We think this finding very properly disposed of this contention. Although respondent knew that hydrant I was not in operation and thus the fire department might lose time in attempting to use it, it did not give notice or warning of this either to the vessel or the fire department. It is well settled that one who knowingly interferes with fire-fighting operations in connection with a fire already in progress, or with foreseeable future aid, is liable to the person whose property is injured thereby. Metallic Compression Casting Co. v. Fitchburg R.R., 109 Mass. 277 (1872); A.L.I. Restatement, Torts Second § 327, Comment (a) illustration 3.

All other points raised have been considered and found to be without merit.

The judgment of the district court is vacated and the case remanded for further findings consistent with this opinion.