**298 S.E.2d 228**

**PERLICK AND COMPANY, an Ohio Corporation, Incorporated under the Laws of The State of Ohio**

v.

**LAKEVIEW CREDITOR'S TRUSTEE COMMITTEE, Consisting of Douglass H. Adams, R.M. Busch, Bert F. Hider, Jack R. Murray, and William C. Yeager, Lakeview Estates, Inc., a West Virginia Corporation, and W. Va. Financial Service Corporation, a West Virginia Corporation.**

No. 15483.

Supreme Court of Appeals of West Virginia.

Dec. 1, 1982.

---

Goldenberg, Goldenberg & Stealey and David M. Goldenberg, Parkersburg, for appellant.

Burk & Bayley and Thomas W. Bayley, Parkersburg, for appellees.

McHUGH, Justice:

This action is before this Court upon an appeal by Perlick and Company (hereinafter "Perlick") from the entry of a summary judgment by the Circuit Court of Wood County, West Virginia. Summary judgment was granted by an order entered on April 16, 1981. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

This appeal concerns two different actions, *Nelson Plumbing Company v. Lakeview Estates, Inc., et al.* (Civil Action No. 9508, filed on February 16, 1968 in Wood County) and *Perlick and Company v. Lakeview Creditors Trustee Committee, et al.* (Civil Action No. 80–C–1512–B filed on November 25, 1980). The latter is the action from which this appeal is taken.

On May 27, 1966, Perlick, the appellant, entered into a contract with the appellee, Lakeview Estates, (hereinafter "Lakeview"), to supply plumbing fixtures and other materials for a construction project. A substantial portion of Perlick's obligation under the contract was subcontracted to the Nelson Plumbing Company (hereinafter "Nelson"). In June of 1967 Lakeview halted construction after experiencing financial difficulties. Lakeview was unable to pay a certain amount owed to Perlick, which in turn was unable to pay the subcontractor Nelson. As a result Nelson filed a lien against Lakeview in the amount of $20,456.47.

In order that construction might resume without further interruption, Lakeview, on December 11, 1967, entered into a "Creditors Agreement" (hereinafter "Agreement") with its creditors. The Agreement stated that once a creditor's claim had been verified concerning its validity and amount the creditor would receive a "Participation Certificate" (hereinafter "Certificate"). Upon receipt of this Certificate by the creditor any and all rights held pursuant to the original debt would be released. The Certificate enabled each creditor to receive the monies owed to it out of the future profits of Lakeview's apartment complex.

However, neither Perlick nor Nelson ever received a Certificate, because the lien filed by Nelson against Lakeview was not discharged by the Agreement.[1] The lien represented an amount which was due and owing to Perlick, who in turn owed it to Nelson.

In order to enforce its lien, Nelson, on February 16, 1968, filed suit against Lakeview (Civil Action No. 9508). On April 30, 1968, Lakeview filed a third-party complaint against Perlick. In that third-party complaint Lakeview stated that Perlick, in

---

1. Section 1.1(B)(ii)(14) of the Agreement reads:

   A lien in favor of Nelson Plumbing Company, in the amount of $20,456.47, dated June 29, 1967, and recorded in the Clerk's office on August 29, 1967, in Mechanic's Lien Docket 12, at page 192.

   The above lien is excepted from the provisions of this contract and made subject to the following:

   Notwithstanding anything contained in this agreement to the contrary, the priority of the recorded lien of Nelson Plumbing Company in the amount of $20,456.46 [sic] set forth above is not waived, discharged or released by Nelson Plumbing Company at the time of the execution and delivery of this agreement, nor at any other time, nor shall it be affected by this agreement.

   Nelson Plumbing Company reserves the right to pursue its legal remedies to, among other things, establish and determine that such recorded lien is a valid lien having priority over the lien of First National Bank noted and set forth in paragraph I, 1.1, B., i., (1) hereof.

   Lakeview and First National reserve the right to bring an action to contest the validity, amount and priority thereof, or to contest the same in any legal proceedings instituted by Nelson Plumbing Company, or by any other party in interest.

   Nelson Plumbing Company, Lakeview and First National also reserve the right to settle and determine the matter by payment or compromise, provided that they agree thereto in writing signed by them.

   Lakeview and First National also reserve any rights which each may have severally or jointly against Perlick & Company respecting the claims of Nelson Plumbing Company.

a series of "waiver of lien" forms, had warranted that all subcontractors had been paid in full. Thus, if Lakeview was to be held liable to Nelson for the $20,456.47, then Lakeview demanded judgment against Perlick for the same amount.

In its answer of May 21, 1968, Perlick denied the allegations of Lakeview. Then, on June 24, 1970, Perlick filed a counterclaim against Lakeview for the money due under the original contract, $21,215.00, plus retainage of $10,000.

On July 7, 1969, the First National Bank of New Jersey, which had been the principal lender to Lakeview Estates, purchased Nelson's interest for $22,901.80, in order to remove the lien. On July 7, 1976, Perlick settled out of court with the First National Bank of New Jersey for $7,000 which extinguished Perlick's obligation to Nelson.

No other action took place in that case until September 28, 1977, when it was dismissed and struck from the docket of the Circuit Court of Wood County pursuant to *W. Va. Code*, 56–8–9 [1931][2] due to inactivity during the preceding two years.

The present action commenced on November 25, 1980, when the Creditors Committee, which was established by the Creditors Agreement, failed to honor a claim filed by Perlick against Lakeview. On April 16, 1981, the Circuit Court of Wood County entered an order of summary judgment against Perlick holding that the September 28, 1977, dismissal of *Nelson Plumbing Company v. Lakeview Estates, et al.* was an adjudication upon the merits and thus served as *res judicata* to the present action. (Civil Action No. 80–C–1512–B).

Perlick asserts four errors. First, the circuit court erred when it held that the dismissal pursuant to *W. Va. Code*, 56–8–9 [1931] of the earlier action served as an adjudication upon the merits and as such constituted *res judicata* to the present ac-

tion. Second, the circuit court erred when it held that the subject matter of the two actions were the same, which resulted in barring the present action. Third, the circuit court erred in granting Lakeview's motion for summary judgment when an affidavit filed on April 6, 1981, by Perlick's counsel shows that a genuine issue of material fact exists. Fourth, the circuit court erred in granting summary judgment before discovery had been permitted.

We are concerned with the issues relating to two matters: (1) the original contract, and (2) the Creditors Agreement. In the appeal now before the Court it is accepted that under the original contract Lakeview owed Perlick a certain amount of money. It is now asserted by Perlick that by virtue of the Agreement there was a novation of the original contract by the parties involved in this appeal. It is argued by Perlick that if such a novation was accomplished then the subject matter of this appeal (the Agreement) is different than the subject matter of Perlick's counterclaim (the original contract) in 1970. Therefore, if a novation of the original contract was accomplished then Perlick would be able to proceed on the Agreement, the subject of this appeal. It is within this framework that the issues will be decided.

However, because the circuit court granted Lakeview's motion for summary judgment this Court must carefully examine the Creditors Agreement, which may or may not have novated the original contract, and Perlick's affidavit of April 6, 1981, in order to determine if a genuine issue of material fact can be said to exist. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 1, *Karnell v. Nutting*, 166 W.Va. 269, 273 S.E.2d 93 (1980), and cases cited therein.

2. *W. Va. Code*, 56–8–9 [1931] reads:
Any court in which is pending any case wherein for more than two years there has been no order or proceeding but to continue it, or wherein the plaintiff is delinquent in the payment of accrued court costs, may, in its

discretion, order such case to be struck from its docket; and it shall thereby be discontinued. A court making such order may direct it to be published in such newspaper as it may name.

This Court addressed the issue of novation in *Davis v. International Harvester Company of America*, 110 W.Va. 121, 157 S.E. 584 (1931). In syllabus point 3 of that case we held: "Novation may be effected by a substitution of a new obligation between the same parties, with intent to extinguish the old obligation." In citing *Izzo v. Ludington*, 79 A.D. 272, 79 N.Y.S. 744 (1903) this Court has also held, "[n]ovation requires the creation of new contractual relations as well as the extinguishment of old. There must be a consent of all the parties to a substitution, resulting in the extinguishment of the old obligation and the creation of a valid new one." *Chenoweth v. National Building Association*, 59 W.Va. 653, 657, 53 S.E. 559, 561 (1906).

■ Moreover, a federal district court in *Edward Petry & Company v. Greater Huntington Radio Corporation*, 245 F.Supp. 963 (S.D.W.Va.1965) held that: "Novation is generally defined as a mutual agreement among all parties concerned for discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another." 245 F.Supp. at 968 citing *Arlington Towers Land Corporation v. McFarland*, 203 Va. 387, 124 S.E.2d 212 (1962); 66 C.J.S. *Novation* § 1 (1950).

■ Therefore, the necessary elements of a novation are, (a) a previous valid obligation, (b) a consent by all parties to the new contract, (c) an abatement of the old contract and (d) a new contract which is valid and enforceable. Without any one of these essential elements, there is no novation. *See* 245 F.Supp. at 968; 66 C.J.S. *Novation* § 3 (1950).

■ It is a well established principle that a novation is not to be presumed. There must be an explicit showing that a novation was the definite intention of all parties concerned. *Fredeking v. Read*, 113 W.Va. 722, 726, 169 S.E. 387, 389 (1933); *Arlington, supra*, 203 Va. at 392, 124 S.E.2d at 215.

There is no disagreement that the original contract between Perlick and Lakeview constituted a valid obligation. Nor can there be any disagreement that the Creditors Agreement also constituted a valid obligation between Lakeview and those creditors who were parties to the Agreement. However, before the original contract between Perlick and Lakeview can be abated (the third element) the two parties must have necessarily agreed to the Creditors Agreement (the second element). If either of these two essential elements is missing, then a novation of the original contract was not accomplished and Perlick will be precluded from proceeding in the present action.

Thus, the inquiry upon which this Court must focus is whether Perlick was a party to the Agreement. Therefore, the Agreement must be examined, along with Perlick's subsequent actions concerning the Agreement and Perlick's affidavit of April 6, 1981. If any genuine issue of material fact is raised, then, obviously, the granting of summary judgment in favor of Lakeview was inappropriate.

Following the halting of construction on Lakeview's apartment complex in June, 1967, a group of Lakeview's creditors formed a Committee of Trustees. To ensure complete cooperation of all the creditors the First National Bank of New Jersey wrote a letter to all the creditors, including Perlick, requesting information on the amounts owed by Lakeview. Perlick responded to that letter.

On August 16, 1967, Bert F. Hider, of the Commercial Banking and Trust Company in Parkersburg, and later a Trustee of the Committee, wrote Perlick asking for Perlick's active participation in the formation of what was to later become the Creditors Agreement. Perlick responded by letter dated August 21, 1967, which merely stated that as of July 1, 1967, Lakeview owed Perlick a total of $21,215.00.

On December 11, 1967, the Creditors Agreement was established. According to Schedule "A" of the Agreement Perlick was listed as having a claim against Lakeview to the extent of $21,215.00. However, all claims listed in Schedule "A" were unverified claims. According to Paragraph

6.1 [3] of the Agreement all claims listed in Schedule "A" must first be verified as to their validity and amount by the Trustee Committee before the claim could be approved. Once a claim was approved then both its validity and amount would be deemed final for all purposes. Furthermore, according to Paragraph 13.13 [4] if any dispute arose concerning the validity or amount of any claim filed by a creditor then the dispute would be settled by arbitration, pursuant to the rules of the American Arbitration Association.

According to Paragraph 7.2 [5] of the Agreement if Perlick's claim was approved by the Trustee Committee Lakeview would issue a "Participation Certificate" in the amount of Perlick's approved claim. According to Paragraph 8.1 [6] of the Agreement only when a creditor, who was listed in Schedule "A," received a proper Participation Certificate did it "release, settle and acknowledge to be fully satisfied, any and all rights, claims, demands or causes of action" it may have had against Lakeview.

On April 19, 1968, Hider, of the Trustee Committee, once again wrote to Perlick stating that the Committee was reviewing Perlick's claim. According to that letter when the Committee and Perlick agreed on the claim's validity and amount a Participation Certificate would be issued. Perlick does not aver in its affidavit of April 6, 1981, that an agreement was ever reached by the Committee and Perlick.

On October 22, 1969, the claims of all the creditors were verified concerning validity and amount. Hider wrote a letter on that date listing the amount of each valid claim which was approved by the Committee. Furthermore, the second paragraph of that letter reads, "The adjusted total of accounts is $517,270.71 for which notes and participation certificates have been issued to all creditors except Perlick & Co. as explained in a footnote to the schedule." That footnote which was contained on page two of the schedule attached to the October

3. Section VI, Creditors' Claims reads:

> Creditors' claims shall be determined and verified as follows:
>
> *6.1 Verification of Claims:* As promptly as possible after the effective date of this Agreement the Trustee-Committee shall verify the validity and amount of all existing claims against Lakeview as set forth in 'Schedule A' attached, and where any discrepancy is found to exist between 'Schedule A' and the findings of the Trustee-Committee, the Trustee-Committee shall give notice of such discrepancy to the creditor involved and 'Schedule A' shall be amended to reflect such change. Thereupon, the creditor holding such claim shall be bound by the finding of the Trustee-Committee, subject to such creditor's right to contest such finding under the procedure for disputes hereinafter set forth. After the Trustee-Committee has verified the validity and amount of all such claims, the Trustee-Committee shall approve such claim, and the validity and amount thereof shall be deemed final for all purposes.

4. *13.13 Arbitration.* Any dispute or controversy concerning the validity or amount of any claim filed by any Creditor or any debt or obligation owing by Lakeview (other than the debt due to First National) or any dispute or controversy arising in connection with the action of or authority of Lakeview, its officers and directors and the Trustee-Committee, (except with respect to First National) shall be determined by arbitration, in Parkersburg, West Virginia, pursuant to the rules of the American Arbitration Association. Any award rendered therein shall be final and binding on all of the parties, and judgment may be entered thereon in the Circuit Court of Wood County, West Virginia. This arbitration clause does not apply to any debt due to First National and First National is not bound thereby, nor shall it be required to resort to arbitration to enforce any rights it may have.

5. *7.2 Participation Certificates.* Upon final execution of this Plan and subject to final approval of the validity and amount of each claim by the Trustee-Committee, Lakeview shall issue to each Creditor to this Agreement as listed on 'Schedule A' hereto, its participation certificate, in the form of Attachment B hereto, and in the principal amount of said party's claim as shown in said 'Schedule A'.

6. *8.1 Effect of Participation Certificates on Debt.* Subject to the conditions herein contained, the effectiveness of this Agreement, and the receipt of a proper participation certificate by the parties listed in 'Schedule A' hereto, all of the parties to this Agreement hereby expressly and individually release, settle and acknowledge to be fully satisfied, any and all rights, claims, demands or causes of action which they or any of them may have against Lakeview, its successors and assigns, other than the rights which the Creditors hereto have under the terms of the

22, 1969, letter reads, "Nelson Plumbing Co. has sued Perlick & Co. for an amount claimed due it as sub-contractor to Perlick. No note or participation certificate has been issued for this amount which appears to be payable by Lakeview." Additionally, the final paragraph of the letter states that if any question should arise concerning the status of any creditor then an inquiry should be made. It is undisputed that Perlick did not make such an inquiry. Instead Perlick, on June 24, 1970, filed a counterclaim in the original action against Lakeview. The counterclaim sought to enforce the original contract.

Perlick does not dispute that it did not actively participate in the formation of the Agreement. Perlick does not dispute that it and the Committee never mutually agreed on the validity and amount of appellant's claim. Furthermore, Perlick does not dispute that it never received a Participation Certificate. Nor does Perlick dispute the accuracy of the second paragraph of the October 22, 1969, letter which states that it was not issued a Participation Certificate.

■ After a critical examination of the Creditors Agreement,[7] and its attendant documents, i.e., the letters and schedules, it is obvious that before Perlick could have been a party to the Agreement Perlick must have received a Participation Certificate. Only through the receipt of a Certificate by Perlick could Perlick then "release, settle and acknowledge to be fully satisfied, any and all rights, claims, demands or causes of action [which Perlick had] against Lakeview."[8] It is also obvious from the Agreement and the October 22, 1969, letter from the Trustee Committee to all Lakeview creditors that Perlick specifically was not issued a Certificate. Moreover, Perlick in its affidavit of April 6, 1981, does not aver that it received a Certificate. Additionally, when Perlick filed its counterclaim on June 24, 1970, in the action styled *Nelson Plumbing Company v. Lakeview Estates, Inc., et al.* (Civil Action No. 9508), it asserted its claim against Lakeview based upon the original contract, not the Agreement. Nor does any other information available to this Court point to the issuance of a Certificate to Perlick. Without the Certificate Perlick could not have been a party to the Agreement. Because Perlick was not a party to the Agreement the element of "consent" is absent. Thus, a novation of its original contract with Lakeview was not accomplished.

Thus, Perlick's only possible cause of action by which it can pursue any remedies which it may have is the enforcement of the original contract. However, on September 28, 1977, the trial court dismissed the previous action (Civil Action No. 9508), because no order had been made or proceeding held during the preceding two years. The trial court stated in its order that the dismissal was pursuant to *W.Va. Code*, 56–8–9 [1931]. Lakeview contends, however, that W.Va.R.Civ.P. 41(b) is controlling because the rule supersedes the statute.

In *Arlan's Department Store of Huntington, Inc. v. Conaty*, 162 W.Va. 893, 253 S.E.2d 522 (1979) this Court discussed the interrelation of both dismissals, under *W.Va. Code*, 56–8–9 [1931], and reinstatement, under *W.Va. Code*, 56–8–12 [1931],[9] with W.Va.R.Civ.P. 41(b).[10] In that case

---

participation certificates and as provided in this Agreement.

7. *See* nn. 5–6 and accompanying text.

8. Paragraph 8.1 of the Creditors Agreement. *See* n. 6 and accompanying text.

9. *W.Va. Code*, 56–3–12 [1931] reads:
   Any court may, on motion, reinstate on the trial docket of the court any case dismissed, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after the order of dismissal shall have been made, or order of

nonsuit entered; but any such order of reinstatement shall not be entered until the accrued costs in such case shall have been paid.

10. W.Va.R.Civ.P. 41(b) reads, in part:
   Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.
   Any court in which is pending an action wherein for more than two years there has been no order or proceeding but to continue

we noted that the above two statutory rules of court were "incorporated virtually verbatim without any apparent change of substantive significance in the second paragraph of R.C.P. 41(b)." 162 W.Va. at 897, 253 S.E.2d at 525.

However, we also noted *W. Va. Code*, 51–1–4 [1935] which reads, in part, "[a]ll statutes relating to pleading, practice and procedure shall have force and effect only as rules of court and shall remain in effect unless and until modified, suspended or annulled by rules promulgated pursuant to the provisions of this section." 253 S.E.2d at 525. While the two code sections were included into Rule 41(b), the rule adds another dimension which is absent from the statutes. That other dimension is that, "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits." Because Rule 41(b) contains this added language concerning "adjudication upon the merits" *W. Va. Code*, 56–8–9 [1931] is thus modified and superseded by the rule to that extent. Thus, even though the trial court cited the statute, Rule 41(b) controls.

■ Rule 41(b), like *W. Va. Code*, 56–8–12 [1931] before it, further allows that any action dismissed pursuant to the rule may be reinstated if a motion is made to do so within three terms following the dismissal. Perlick did not make such a motion in Civil Action No. 9508 within the three terms as permitted by Rule 41(b). Thus, the language and meaning of the rule are explicit.

When an action is dismissed pursuant to W.Va.R.Civ.P. 41(b), and that action is not reinstated within three terms after the entry of the order of dismissal, that dismissal, unless the court otherwise specified, operates as an adjudication upon the merits.[11]

This holding is further supported by the purpose of the rule itself. Except for the addition of the two statutes cited above, West Virginia Rule 41(b) was taken virtually verbatim from Fed.R.Civ.P. 41(b). Both rules represent the extension of the " 'inherent power' ... necessarily vested in courts to manage their own affairs" so that they are able "to clear their calendars of cases that have remained dormant because of the inactivity or dilatoriness of the parties seeking relief." *Link v. Wabash Railroad Company*, 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734, 738, *reh'g denied*, 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962).

■ Thus, in the appeal before this Court the dismissal of Civil Action No. 9508 was an adjudication upon the merits and operated as *res judicata* to any further proceedings which Perlick may have against Lakeview based upon the original contract.

Following a careful examination of the record this Court holds that no genuine issue of material fact exists concerning the issues in this action, therefore, the entry of summary judgment was proper. Nor was there a novation of the original contract. Finally, the dismissal of Civil Action No. 9508 operated as *res judicata* to any fur-

---

it, or wherein the plaintiff is delinquent in the payment of accrued court costs, may, in its discretion, order such action to be struck from its docket; and it shall thereby be discontinued. The court may direct that such order be published in such newspaper as the court may name. The court may, on motion, reinstate on its trial docket any action dismissed under this rule, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after entry of the order of dismissal or nonsuit; but an order of reinstatement shall not be entered until the accrued costs are paid.

11. However, circumstances may arise which would enable a specific case to be reinstated

even though the three terms had expired. As this Court held in *Arlan's Department Store, supra:*

[I]t has been held that an inadvertently discontinued case may be reinstated by consent of the parties where more than three terms of court have elapsed. Syl. pt. 1, *State ex rel. Brannon v. Hudson*, 95 W.Va. 183, 120 S.E. 921 (1923). It is also generally accepted that a court can reinstate an action after the expiration of the time specified in the court rule for making a reinstatement motion where there is a showing of fraud, accident or mistake.

162 W.Va. at 899, 253 S.E.2d at 526. *See* 24 Am.Jur.2d *Dismissal, Discontinuance & Nonsuit* § 80 (1966); 27 C.J.S. *Dismissal & Nonsuit* § 79 (1959).

ther proceedings by Perlick under the original contract.

Accordingly, upon all of the above, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.