WILLIAM LEE, ET AL.

V.

J.C. BELL

Record No. 870176

April 21, 1989

Present: All the Justices

*Raymond R. Robrecht* for appellants.

*R. Louis Harrison, Jr. (Robert T. Wandrei; Radford & Wandrei*, on brief), for appellee.

WHITING, J., delivered the opinion of the Court.

The principal questions in this case are whether a tenant's creditor, or its landlords, has the initial burden of going forward with evidence that: (1) replacement fixtures to be purchased by the landlords have a greater value than the fixtures wrongfully removed by the creditor; and (2) the replacement costs exceed the diminution in market value of the realty resulting from their removal. An additional issue is whether the landlords' evidence of the cost of replacing the fixtures was clear and uncontradicted.

On March 31, 1981, William Lee and Janice J. Lee (the landlords) leased their commercial/industrial building in the City of Salem to Bell-Moody Foundry, Inc. (Bell-Moody) for use as a foundry and metal fabricating plant. Later, Bell-Moody became indebted to J.C. Bell (Bell) and, on February 1, 1983, it secured that indebtedness by a chattel lien upon all its machinery, equipment, and other personal property located on the demised premises. In July 1985, when Bell-Moody became bankrupt, its trustee disclaimed any interest in the above-mentioned property.

On August 26, 1985, the landlords filed this declaratory judgment action against Bell, seeking an adjudication that certain of Bell-Moody's equipment constituted fixtures and, therefore, became the property of the landlords. On March 19, 1986, the circuit court held that most of the equipment had not been sufficiently affixed to the realty so as to become property of the landlords. The court did find, however, that most of the electrical panels, transformers, wires, "and so forth" in the walls and ceilings had become a part of the realty and, therefore, should not be removed.

The court allowed Bell to remove Bell-Moody's property, and ordered him to repair any damages caused by such removal, within 75 days, and to pay the sum of $650 per month as rent during that time. Bell did not remove the equipment within the 75-day period and, on August 28, 1986, the court required Bell to remove it within the following 10 working days and increased the rent from $650 per month, or $21 per day, to $60 per day. The court ultimately awarded the landlords the sum of $1,860 as rent for the 30-day period Bell occupied the premises after August 28, 1986.

Contrary to the court's direction, Bell removed virtually all the electrical panels, transformers, and wires from the walls. At a hearing on September 26, 1986, the court found that Bell had wrongfully removed the electrical fixtures. Douglas W. Feller, an

experienced electrician, testified for the landlords that it would cost $6,760 to replace a three-phase 400 amp 208 volt panel, conduit, and wire, $1,600 to replace the conduit, breakers, and wire to feed the master control panel, and $2,100 to replace the conduit, breakers, and wire to feed the disconnects to three air compressors. Bell introduced no evidence to contradict Feller's estimate, or to show that the removed items had depreciated. The court awarded the sum of $1,000 for these claims, which totaled $10,460.

The landlords contend that the circuit court's award of damages was inadequate in two respects as a matter of law.

■ First, they assert they should have been awarded the difference in the rent they would have received had they been able to rent the building to another tenant for the period of one year, and the amount actually paid by Bell. The prospective tenant testified that although he was interested in leasing the property, he had not been inside the building to determine "if it was open space and I could put up some type of storage racks and have gotten around inside of it with a forklift." The landlords offered no proof to show that the interior of the building would have met those conditions. Thus, we cannot say that the trial court erred in finding that the landlords failed to prove their claim for damages in the loss of the prospective lease.

Next, the landlords claim that, as a matter of law, they established their right to recover $10,460 because of Bell's wrongful removal of the electrical fixtures. Bell argues that the trial court properly awarded only $1,000 on this claim. We find no merit in the following contentions made by Bell, and conclude that the trial court erred in limiting these items of the landlords' damages.

■ First, Bell contends that the landlords did not introduce evidence appropriate to the proper measure of damages. The trial court so reasoned in reducing the landlords' claim. According to Bell, the proper measure of damages in this case is the diminution in the fair market value of the realty because of the removal of these fixtures, not the cost of replacing them. That may have been the appropriate measure of damages in this case, *if* evidence had been introduced showing that the replacement cost of the fixtures would exceed such difference in fair market value. There was no such evidence introduced, and the burden was upon Bell to do so. *See Green* v. *Burkholder*, 208 Va. 768, 771, 160 S.E.2d 765, 767 (1968); *Richmond* v. *Cheatwood*, 130 Va. 76, 86-87, 107 S.E.

830, 834 (1921); *Jeffress* v. *Virginia Ry. & P. Co.*, 127 Va. 694, 730-32, 104 S.E. 393, 405 (1920).

Second, Bell argues that no evidence was introduced as to the value of the electrical fixtures at the time of their removal, taking into account depreciation. In effect, Bell argues that because of depreciation, the replacement fixtures have a value greater than those fixtures he wrongfully removed, so that the landlords will gain a windfall if they recover their full replacement costs.

The question is, essentially, which party has the initial burden of showing depreciation or "betterment." Counsel cite no Virginia cases on the point, and we find none.[1] We do find, however, a few cases from other jurisdictions. *Boston Fish Market Corp.* v. *Universal Insurance Co.*, 388 F.2d 773, 776 (1st Cir. 1968) (proof of cost of repairs of personal property makes *prima facie* showing of loss and casts burden of production on defendant to show prior depreciation to reduce the damage claim); *Pasadena State Bank* v. *Isaac*, 149 Tex. 47, 52, 228 S.W.2d 127, 129 (1950) (proof of cost of repair of damaged personal property constituted *prima facie* evidence of loss, and shifted burden to defendant to show repairs would result in betterment).

We have, however, analogous precedent in Virginia. We have said that a defendant has the burden of proof as to mitigation of damages. *Foreman* v. *Caligari, Inc.*, 204 Va. 284, 290, 130 S.E.2d 447, 451 (1963); *Land Corporation* v. *McFarland*, 203 Va. 387, 393, 124 S.E.2d 212, 216 (1962); *Paddock* v. *Mason*, 187 Va. 809, 818-19, 48 S.E.2d 199, 203-04 (1948). And if a special benefit is conferred upon a plaintiff by a defendant's tortious act, evidence of that benefit may be considered by the jury in mitigation of damages. Restatement (Second) of Torts § 920 (1977). We believe evidence of betterment, in the nature of damages allegedly in excess of the depreciated value of goods taken or destroyed, should be considered in a similar light.

Accordingly, although a plaintiff has the risk of non-persuasion as to the quantum of damages, if a defendant claims that by

---

[1] *White Consolidated Industry, Inc.* v. *Swiney*, 237 Va. 23, 376 S.E.2d 283 (1989), is inapplicable. There, we denied a claim for damages for the loss of household personal property because the plaintiffs failed to prove depreciation. The Swineys attempted to prove the fair market value of such property, which had been in use for a number of years, by evidence of its original purchase price without proof of the extent of its depreciation. In this case, the landlords seek to recover their repair costs.

reason of prior depreciation, repair or replacement of wrongfully removed or destroyed property results in an unjustified betterment of the plaintiff, we are of opinion that the defendant should have the initial burden of going forward with some evidence of depreciation, unless it appears from the plaintiff's evidence. Because neither party introduced such evidence here, we hold that the trial court could not have reduced the landlords' claim for damages for lack of such proof.

■ Third, Bell maintains that the landlords' evidence of replacement cost was unclear and contradicted. The record does not support Bell. Feller's testimony was clear, unequivocal, and uncontradicted. Although the trial court described Feller's testimony and estimate as "too speculative" and "too incredible," the record indicates no attack upon his competence as an electrician experienced in such repairs and estimates, no cross-examination as to the amount of his estimate, and no witness testifying to the contrary. Under these circumstances, the trial court was obliged to accept Feller's testimony. *See Haass & Broyles Excavators* v. *Ramey Bros.*, 233 Va. 231, 236, 355 S.E.2d 312, 315 (1987) (lay witness); *Hankerson* v. *Moody*, 229 Va. 270, 274-75, 329 S.E.2d 791, 794 (1985) (expert witness); *cf. City of Roanoke* v. *County of Roanoke*, 204 Va. 157, 168, 129 S.E.2d 711, 718 (1963) (other evidence in conflict with experts' opinion testimony).

■ We deny Bell's request to remand the case for retrial so that he may produce an electrician to contradict Feller. At the hearing, Bell asked for a continuance to get an electrician for whom he had issued a summons, but was unable to say whether the summons had been served. When asked to proffer the witness's testimony, Bell did not say he would contradict Feller's estimates of the cost of replacing the electrical equipment in question. Furthermore, at another hearing on November 5, 1986, Bell produced Dewey L. Milton, an electrician who said he had worked for Bell in removing the equipment, to testify about the manner in which he removed it, but Milton was never asked about Feller's testimony. Additionally, Bell assigns no cross-error to the trial court's ruling denying him a continuance.

■ For the foregoing reasons, we will affirm the trial court's ruling on the rental claim, but reverse its ruling limiting to $1,000

the damages for the electrical fixture removal.[2] Because the amount of such damages is uncontradicted and sufficient facts are before the Court to enable us to render final judgment upon the merits to attain the ends of justice, Code § 8.01-681; *Powell* v. *Sears, Roebuck & Co.*, 231 Va. 464, 471, 344 S.E.2d 916, 920 (1986), we will modify the judgment to include the full amount ($10,460 less the $1,000 awarded) claimed by the landlords for the wrongful removal of the electrical fixtures we have discussed, and enter final judgment for $13,950 ($4,490 judgment awarded, plus $9,460).

> *Affirmed in part,*
> *reversed in part,*
> *modified, and final judgment.*

---

[2] We believe the dissent erroneously focuses on only a portion of the trial court's ruling in concluding that it did not require Bell to replace the 400 amp panel. Specifically, the dissent quotes the following:

[t]he evidence of even the Plaintiff as well as the Defendant is that there is 400 amp service in the building and that is all that I required was that there be there [sic] what Mr. Lee had before.

A more complete quotation, indicating the error, follows.

It was my idea that they were going to go back to the walls of the building, is what was what [sic] I intended.

Everything inside was to be removed and everything along the outside of the walls was to be left.

The evidence of even the Plaintiff as well as the Defendant is that there is 400 amp service in the building and that is all that I required was that there be there [sic] what Mr. Lee had before.

I do not find that Mr. Bell is obligated to leave in or put back all of the things that Feller has testified to in the way in which he has testified to them.

I think, Lee, it was my intention that Mr. Lee would have those things along the walls for whatever use that may be made, they would have some value to him as boxes and panels and that type of thing, but with all of the equipment being taken out and being an unleased, unrented property it would not have any specific use to him.

They would have some values, but to value in a way in which Mr. Lee's witness has to the cost of replacing all of it is just to [sic] speculative, and simply, Mr. Bell's estimate is just too incredible for the Court to accept on its face.

I don't think that the cost of the service is at issue, nor do I think that the cost of installing the service is an issue, but the cost of the equipment is.

Mr. Bell was not supposed to remove those things. *So, I find that Mr. Bell has violated the prior Court Order in taking out those switch boxes and electrical boxes and motor controls and panels that were on the walls of the premises*, that has been violated [sic] of my Order.

I am going to place a value on it. I do not find that the method in which the plaintiff's witness has testified is the proper method. (Emphasis added.)

LACY, J., with whom CARRICO, C.J., and THOMAS, J., join, concurring in part and dissenting in part.

In awarding Lee damages of $10,460 for wrongful removal of electrical fixtures, the majority focuses solely on the testimony regarding the amount of damages Lee should receive. The majority's approach, however, assumes Lee was entitled to recover damages for each item described by his electrician witness. While supporting Bell's liability for many items, the record in my opinion does not support recovery for the largest item — the 400 amp panel and associated conduit and wire — given a replacement value of $6,760. My review of the record indicates that the trial court disregarded the value of this panel because it was an item Mr. Bell was not required to replace pursuant to a prior order of the court.

Initially, 400 amp service entered the building through equipment mounted on the east wall. Subsequently, an addition was built and the electrical service was transferred to the west wall, where it is located today. In the interim, however, conduit was run from the west wall panel to another 400 amp panel on the east side of the building. This second panel providing 400 amp service was utilized for machinery used in the building. Bell removed this east side panel and severed the service lines to it. Lee's witness testified that it would cost $6,760 to replace this east side panel. There was no dispute, however, that 400 amp service remained available in the building through the panel on the west side.

The March 19 order of the court provided: "Said personal property shall not include . . . the electric panel that provides electrical current to the premises, nor the electric furnace located in the locker room on the premises which is used for heating purposes." At the September 26 hearing, held to determine the extent to which Bell had complied with the court's earlier orders, the court interpreting its March order stated:

The evidence of even the Plaintiff as well as the Defendant is that there is 400 amp service in the building and that is all

that I required was that there be there [sic] what Mr. Lee had before.

In other words, Bell did not violate the court's order when he removed the 400 amp panel on the east wall, because 400 amp service was available to the building through the west wall panel. Therefore, Lee was not entitled to replacement of that item, regardless of the cost.

While testimony of Lee's electrician regarding the replacement value of this item may be uncontradicted, that testimony cannot impose liability. The trial court certainly has the ability to interpret its own directive, and is not bound on the question of liability by one party's uncontradicted testimony regarding the amount of damages.

I concur with the majority in affirming the denial of Lee's claim for lost rent and in reversing the ruling setting damages at $4,460, which included only $1,000 for the removal of electrical items. Unlike the majority, however, I would enter final judgment of $7,190, which excludes the $6,760 relating to placement of the 400 amp electrical panel and conduit wires.