## Richmond

E. Kemper Beard, Trustee, Et Al. v. Thomas L. Poe, T/A, Etc.

March 8, 1971.

Record No. 7277.

Present, All the Justices.

R. J. Lillard (Jessee B. Wilson, III; McCandlish, Lillard & Marsh, on brief), for plaintiffs in error.

H. Kendrick Sanders (Royce A. Spence; Gilliam and Sanders; Gibson, Hix and Hansbarger, on brief), for defendant in error.

Gordon, J., delivered the opinion of the court.

On January 5, 1967, defendant E. Kemper Beard, as trustee for the owners of property on Prosperity Lane, Fairfax County, made the following "open" listing agreement with plaintiff Thomas L. Poe, trading as Virginia Land Company:

"In consideration of the services of VIRGINIA LAND COM-

PANY, hereinafter called the Agent, to be rendered by said Agent to me, I hereby grant an open listing to said Agent for 180 days from this date to sell my property located [description of property follows].

"This property is to be offered for sale at the price of $1.25 (square foot) conveyed at settlement, or approximately $243,400.00 total sales price.

"You are authorized to offer the property on the following terms [terms follow].

"If the Agent secures a buyer for said property on the terms herein specified or on any other terms which I accept, or if within 120 days after the expiration of this listing agreement a sale is made by the Agent, by I/WE, or anyone else to whom the property has been shown during this listing period, I agree to pay the Agent a commission of TEN (10) percent of the total sales price at settlement, and nothing less.

"You are authorized to place a 'FOR SALE' sign on this property.

"If the Agent procures a buyer, ready, willing, and able to purchase on the above cited terms, I hereby acknowledge that a full commission is due and payable."

In March 1967, a representative of the United States Post Office Department, who had seen the "for sale" sign placed by Poe on the premises, called Poe about the property. Later, at the request of this representative, Poe obtained from Beard a written option agreement dated March 30, 1967 under which Beard agreed to sell the property to the United States for $243,376.25, provided the option was exercised on or before May 1, 1967. Before obtaining this option from Beard, Poe prepared, and he and Beard entered into, the following commission agreement:

"AGREEMENT, made this 30th day of March, 1967, between VIRGINIA LAND COMPANY (Thomas L. Poe, Agent,), hereinafter designated as Broker, and KEMPER E. BEARD,[1] Trustee (Representing Merrifield Properties), hereinafter designated as Seller(s).

---

[1] In the record, defendant Beard is sometimes referred to as E. Kemper Beard and sometimes as Kemper E. Beard.

"WITNESSETH: Whereas, Seller is about to execute an 'OP-TION' for the sale of premises known as [description of property follows] to U.S. POST OFFICE DEPARTMENT, and, . . . . . . .

"WHEREAS, Broker was instrumental in bringing about such contract of sale and in conducting the negotiations prior thereto, and this COMMISSION AGREEMENT is hereby made a part of such contract and negotiations prior thereto.

"NOW THEREFORE, in consideration of ONE DOLLAR ($1.00) and other good and valuable consideration by each of the parties to the other in hand paid, the receipt of which is hereby acknowledged, the parties hereto agree with each other as follows:

"(1) That the Broker, VIRGINIA LAND COMPANY, was the sole agent in any wise instrumental in bringing about such contract of sale and in conducting the negotiations prior thereto.

"(2) That this agreement is made before the signing of OP-TION or CONTRACT or both, of Sale, between Seller and Purchaser for the premises cited herein above, as a condition prece-dent to the consummation of negotiations and to induce the execu-tion of the contract or option as aforesaid.

"(3) That in the event that the aforesaid contract of sale is executed, and the deed to hereinabove cited premises, and the full consideration therefore are actually delivered, received, and ac-cepted in accordance with the terms of such contract of sale and/or option, the Broker hereby agrees to accept TWENTY-FOUR THOUSAND THREE HUNDRED AND THIRTY-SEVEN AND 60/100 DOLLARS ($24,337.60) as his commission in full for his services in connection with such contract negotiations prior thereto, and sale. Settlement attorney is hereby authorized and directed to pay the above BROKER in accordance with this AGREEMENT from sales proceeds at settlement.

"(4) That in the event that the deed to the above mentioned premises, and the full consideration therefore fail actually to be delivered, received, and accepted in accordance with the terms of such contract of sale, whether such failure is due to any default or act of omission or commission, intentional or otherwise, by either Seller or Purchaser, or by any of their heirs, distributees, executors, administrators, successors, or assigns, or by reason of any lack of any approval or consent that may be deemed necessary, proper, or advisable by either such party or by any of their heirs, distributees, executors, administrators, successors, or assigns, or for any other reason whatsoever, *then and in that event the BROKER will and*

*does hereby waive any and all claims for demands in law or in equity for any commission whatsoever in connection with such contract of sale and all negotiations prior thereto and the sale hereinabove referred to.*" (Emphasis supplied.)

The option was not exercised. On June 7, 1967, another representative of the Post Office Department called Beard to arrange a meeting on June 8. At that meeting the representative offered on behalf of the Post Office Department to buy the premises for $225,-000. The question of Poe's right to a commission was discussed at the meeting, and Beard did not then accept or reject the Department's offer. After being advised by counsel that no commission would be owing to Poe, Beard accepted the $225,000 offer. An agreement of sale was made on June 14, 1967, and the property was conveyed to the United States by deed dated July 25, 1967.

Poe brought this action to recover a commission on the sale of the property to the United States. At trial, the Post Office Department representative who consummated the contract with Beard was asked why the Department permitted the option to lapse on May 31, yet offered to buy the property on June 8. The representative said that the Department decided during the option period that it did not need the property, but changed its mind shortly thereafter. The trial court entered judgment for Poe in the principal amount of $22,500, being 10% of the sale price.

Beard appeals. He contends that Poe is not entitled to a commission on the sale of the property because: (1) The March 30, 1967 commission agreement superseded the January 5, 1967 listing agreement, and the commission agreement negated any commission unless the property was sold under the option. (2) Even if the commission agreement did not supersede the listing agreement, under paragraph 4 of the commission agreement Poe waived all right to a commission based on negotiations before the execution of the commission agreement, and Poe did nothing thereafter to maintain the Post Office Department's interest in the property. (3) Irrespective of the provisions of the commission agreement, Poe did not procure the sale to the United States.

The provisions of the listing agreement and the commission agreement do not conflict. Neither the language of the commission agreement nor the testimony discloses an intention that the commission supersede the listing agreement. "In order to effect a novation there must be a clear and definite intention on the part of all con-

cerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed." *J. M. Turner & Co.* v. *Delaney*, 211 Va. 168, 172, 176 S.E.2d 422, 425 (1970), quoting from *Land Corporation* v. *McFarland*, 203 Va. 387, 392, 124 S.E.2d 212, 215 (1962). Finding no such intention, we hold that the commission agreement added additional provisions but did not supersede the listing agreement.

The commission agreement and the listing agreement should be interpreted together to determine their meaning. *See J. M. Turner & Co.* v. *Delaney, supra.* So interpreted, it is apparent that the commission agreement covers a sale under the option agreement, while the listing agreement covers a sale not under the option agreement to a purchaser secured by Poe.

Beard interprets paragraph 4 of the commission agreement as negating compensation to Poe upon any sale to the Post Office Department under terms varying from those set forth in the option agreement, unless Poe's efforts after the execution of the commission agreement prompted the sale. So under Beard's interpretation, he and the Post Office Department could have, at any time after execution of the commission and option agreements, voided Poe's right to compensation by canceling the option agreement and effecting a sale upon different terms. We do not so interpret paragraph 4 of the commission agreement.

Under paragraph 4 of the commission agreement, Poe agreed that if the property were not sold pursuant to the option agreement, he waived any commission with respect to (i) "such contract of sale" (the option agreement), (ii) "all negotiations prior thereto" (negotiations before execution of the option agreement), and (iii) "the sale hereinabove referred to" (a sale pursuant to the option agreement).

If sale were not consummated under the option agreement, clauses (i) and (iii) of paragraph 4 negated the commission specified in paragraph 3 of the commission agreement and clause (ii) negated any *quantum meruit* compensation for "negotiations prior thereto"—that is, compensation for negotiations leading to the execution of the option agreement. The commission agreement contemplated compensation for "contract [option] negotiations". See paragraph 3, *supra.* By clause (ii) of paragraph 4, the parties effectively eliminated any *quantum meruit* claim to a commission if the United States exercised the option but sale was not consummated because, for example, Beard could not convey good title.

But Poe does not claim a commission for negotiating the option

agreement or for procuring the option agreement. Instead, he claims a commission under the terms of the listing agreement specifying a 10% commission "[i]f the Agent [Poe] secures a buyer for said property on the terms herein specified or on any other terms which I [Beard] accept". Poe brought Beard and the Post Office together. Within the period of the listing agreement (180 days after January 5, 1967), Beard accepted an offer and agreed to sell the property to the United States.

The trial judge was justified in finding that Poe secured the United States as a buyer of the property within the meaning of the listing agreement. The judgment for Poe will therefore be affirmed. *Wilson v. Schmidt & Wilson*, 184 Va. 642, 35 S.E.2d 737 (1945).

*Affirmed.*

CARRICO, J., dissenting.

The crux of this case is, of course, the interpretation to be given clause (ii) of paragraph 4 of the commission agreement, in which Poe waived his right to a commission in connection with "all negotiations prior" to execution of the option agreement if the sale contemplated by the latter agreement was not consummated. My interpretation of the clause differs from that of the majority.

The majority says that the purpose of clause (ii), presumably that part relating to claims or demands "in equity," was to negate "any *quantum meruit* compensation for 'negotiations prior'" to execution of the option agreement. I cannot agree with that. In the first place, I am at a loss to know how the question of *quantum meruit* recovery crept into this case. Its debut in the majority opinion will come, no doubt, as a surprise to both parties to this litigation.

Be that as it may, I thought it quite an elementary proposition that no question of implied contract, where *quantum meruit* recovery is applicable, could arise if parties have already defined their rights by express contract. In this case, we have not one, but two, express contracts defining the rights of Poe and Beard. It is only a question of determining what those rights are within the definitions pronounced by the parties. Poe is entitled to recover either under one or both of the express contracts, or not at all. So questions of implied contract and *quantum meruit* recovery are not, and cannot be, involved in this case.

It seems to me that what the majority is saying is that Poe, in the commission agreement, set up for himself and at the same time waived

a *quantum meruit* claim for mere "contract [option] negotiations." This is so, says the majority, because paragraph 3 of the commission agreement "contemplated compensation for 'contract [option] negotiations'" and clause (ii) of paragraph 4 "effectively eliminated" any *quantum meruit* claim which might arise if the Post Office Department exercised its option but Beard refused to convey.

But, anomalous as it may seem to be discussing implied contract questions with an express contract in hand, paragraph 3 of the commission agreement did not contemplate compensation, *quantum meruit* or otherwise, just for "contract [option] negotiations." It contemplated compensation only for "contract [option] negotiations" *and* "sale." And, as the majority points out, Poe waived, in clause (iii) of paragraph 4, any claim to a commission on the sale contemplated by the option agreement if that sale did not go through. So, the effect of the majority's interpretation is to say that Poe, by clause (ii), waived the same right he waived by clause (iii)—a result which might be required were there no logical meaning to be assigned to the language of clause (ii).

However, this is not such a case. I believe an eminently logical meaning of clause (ii) has been advanced by Beard, that is, that if the sale contemplated by the option agreement was not consummated, Poe waived his right to a commission on any other sale to the Post Office Department if based solely on the negotiations conducted prior to the execution of the option agreement. Under that interpretation, if the sale contemplated by the option agreement was not consummated, Poe thereafter would have become entitled to a commission only if by *subsequent negotiations* he rekindled the interest of the Post Office Department and brought about a future sale to it. The sale contemplated by the option agreement was not consummated, Poe did not prove any subsequent negotiations on his part, and he should not be entitled to recover.

I would reverse.