## Richmond

HONEYWELL, INC. v. JOHN C. ELLIOTT, ET AL., ETC., ET AL.

June 12, 1972.

Record No. 7716.

Present, Snead, C.J., I'Anson, Harrison, Cochran and Harman, JJ.

*Francis L. Young* [Md.] (*E. Ralph Coon, Jr.*, on brief), for plaintiff in error.

*Francis J. Pelland* (*John F. Myers* [D.C.], on brief), for defendants in error.

HARRISON, J., delivered the opinion of the court.

In this case we consider the sufficiency of the evidence to sustain a novation.

Whiting-Turner Contracting Company, Inc. (Whiting), a prime contractor, contracted with H. Max Ammerman and others constituting partnerships trading as Tyson's Corner Regional Shopping Center and/or Tyson's Triangle Limited Partnership (Tyson's

Corner or Owners) for the construction of certain stores in a shopping center at Tyson's Corner, Virginia.

On May 2, 1967 Whiting entered into a contract with Harry E. Nau and Co. (Nau) to perform the plumbing, heating, ventilating and air conditioning work for the stores. Thereafter the Walter E. Campbell Co., Inc. (Campbell), Hamilton & Spiegel, Inc. (Hamilton), United Roofing and Sheet Metal, Inc. (United) and Honeywell, Inc. (Honeywell) furnished labor and materials to defendant Nau in connection with the project.

Campbell and Hamilton, in April 1969, and United, in September 1969, filed mechanic's liens, claiming unpaid debts due them in connection with the construction of the shopping center. On September 29, 1969 the three lienors filed a bill of complaint to enforce their respective liens and claimed personal liability on the part of Tyson's Corner.

On June 9, 1969 Nau assigned to National Savings and Trust Company (Bank) all right, title and interest to any monies due or to become due Nau from Whiting. A copy of the assignment was transmitted to Whiting, and this company was directed to send all future payments due Nau to the Bank. Whiting acknowledged receipt of the assignment, and the letter of instructions. It advised the Bank that the Owners were making payments directly to Whiting's subcontractors on the Tyson's Corner project.

On June 24, 1969 Ammerman, on behalf of Tyson's Corner, acknowledged Nau's assignment to the Bank, but stated that no funds were due Nau inasmuch as there were mechanic's liens outstanding at that time.

Representatives of or attorneys for all parties in interest here, other than Honeywell, met in the office of the Tyson's Corner Shopping Center on February 13, 1970 for the purpose of disposing of the various claims then being asserted against Whiting and the Owners.

At that time the Owners were holding the sum of $47,188.91 due for work performed on the Shopping Center. At the meeting counsel for the Bank requested payment to it of the amount due Nau. Ammerman refused to make any payment to the Bank, or anyone else, until the claimants deducted certain engineering fees and attorneys' fees, and discharged the mechanic's liens growing out of the Nau subcontracts. The respective amounts due the Bank, and necessary to pay the mechanic's liens, were stated. Ammerman inquired if there were other liens pending, and was advised by those present that

"they knew of no others", and that the time for filing mechanic's liens had expired. After a full discussion the parties agreed, by way of compromise and settlement of the claims, that the sum of $47,-188.91 held by Tyson's Corner would be disbursed as follows: $6,982.57 to Campbell; $5,135.00 to Hamilton; $11,071.34 to United; and the balance of $24,000.00 to the Bank.

Campbell, Hamilton and United agreed to release their mechanic's liens and to dismiss their respective suits. The Bank agreed to accept $24,000.00 in full settlement of its claim for $50,000.00 as assignee of Nau.

Pursuant to this agreement Tyson's Corner prepared and mailed to their counsel four checks payable as aforesaid. Their counsel prepared releases and dismissal orders to be executed by Campbell, Hamilton and United. The releases and dismissal orders were forwarded by mail to the attorney for the holders of the mechanic's liens. He was assured that if they were executed, endorsed and returned the orders would not be entered until the checks had been forwarded to him.

On February 17, 1970 Honeywell, Inc. filed its petition for attachment against Nau, Whiting and Tyson's Corner. Writs of attachment were duly executed on the principal defendant and the co-defendants prior to the execution of the releases and the satisfaction of the mechanic's liens, and prior to the dismissal of the suits brought by Campbell, Hamilton and United.

As a result of the institution and pendency of the attachment suit, Tyson's Corner refused to deliver the checks, or to pay any sums it held belonging to Whiting or Nau until the status of the attachment suit had been determined. The mechanic's liens were not released of record and the suits were not dismissed.

In Honeywell's petition for attachment, as amended, it was alleged that Nau was indebted to it in the amount of $32,186.28, and that certain real and personal property of Nau was in the possession and under the control of the co-defendants, Whiting and Tyson's Corner. Nau admitted the debt.

Campbell, Hamilton, United and the Bank filed their written motion to intervene in the attachment suit, setting forth their respective mechanic's liens and the assignment, and detailing the negotiations previously conducted.

Various proceedings were had in the cause, including the filing of a written stipulation as to what John F. Myers, attorney for the Bank,

Ammerman, agent for Whiting and Tyson's Corner, Francis J. Pelland, attorney for Campbell, Hamilton and United, and Antonio B. Caggiano, general manager of Tyson's Corner, would testify if called as witnesses.

The trial court consolidated four pending cases involving various facets of the controversy before it, and then determined " . . . to consider the question whether or not a novation had been effected between Tyson's Corner Regional Shopping Center and the Intervenors prior to the date of the levy of the Writs of Attachment by considering the Intervenors' Motion to Dismiss the Attachment as a Motion for Summary Judgment, without determining the validity or priority of the claims of the Intervenors. . . ."

The court then concluded that on February 13, 1970 a novation was made " . . . by and between Tyson's Corner Regional Shopping Center and the Intervenors in Law No. 22442 with the result that, on February 23, 1970, the date on which a Writ of Attachment was served on Tyson's Corner Regional Shopping Center, there were no funds in its possession due and owing to Harry E. Nau & Co., Inc. . . . ."

The court thereupon sustained the motion of the Intervenors, dismissed Honeywell's writ of attachment and ordered Tyson's Corner to disburse the $47,188.91 held by it to the four intervenors as was proposed on February 13, 1970. We granted Honeywell an appeal from this final order.

The issue before us is a narrow one. We need only consider whether the evidence supports the trial court's conclusion that a novation was effected on February 13, 1970. We are not concerned with either the validity or the priority of the claims of the intervenors or Honeywell. Those matters were not the subject of the trial court's final order and judgment, notwithstanding an observation in its opinion letter concerning the validity of the Bank's assignment.

Summarizing from the authorities, novation is defined as a mutual agreement among all parties concerned for discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another. To effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed. To establish novation the proof must be clear and satisfactory. Its essential requisites are a previous valid obligation, the agreement of all parties to the new contract, the

extinguishment of the old contract, and the validity of the new contract. If any of these essentials be absent there can be no novation. See *Land Corporation* v. *McFarland*, 203 Va. 387, 124 S. E. 2d 212 (1962); *Beard* v. *Poe*, 211 Va. 626, 179 S. E. 2d 473 (1971); *Edward Petry and Co.* v. *Greater Huntington Radio Corp.*, 245 F. Supp. 963 (S. D. W. V. 1965); *J. M. Turner & Co.* v. *Delaney*, 211 Va. 168, 176 S. E. 2d 422 (1970); *Wright* v. *Shortridge*, 194 Va. 346, 73 S. E. 2d 360 (1952); 66 C. J. S., *Novation*, § 3 (1950).

Applying these principles the evidence fails to establish a novation. We are unable to find evidence in the record before us that it was ever the intention of the parties that Tyson's Corner be substituted for Nau as the debtor of Campbell, Hamilton, United or the Bank. At the February 13, 1970 meeting Ammerman, representing Tyson's Corner and Whiting, stated unequivocally that he would make no payment to anyone until certain unresolved questions concerning the payment of engineering and attorneys' fees had been settled, and until the mechanic's liens growing out of the Nau subcontract had been discharged. Ammerman further stated that the amount due Nau's subcontractors, and evidenced by the mechanic's liens, would be paid before any amount would be paid the Bank. Obviously he was primarily concerned with clearing the record of liens on Tyson's Corner property.

We find nothing in the stipulation, or elsewhere in the record, to indicate that Ammerman or any of the parties ever intended to create a new contract involving Tyson's Corner and Nau's creditors, or for Tyson's Corner to assume any obligation other than to pay the sum of $47,188.91, which it owed on the construction contract, to the parties legally entitled thereto. It is clear that Ammerman intended to release this money only after the discharge of all existing liens and claims for which Tyson's Corner or Whiting might be held responsible, or which would constitute a cloud on Owner's property.

What ultimately came out of the February 13, 1970 conference was an agreement by Nau's four creditors as to a division of the sum held by Tyson's Corner, which admittedly was due Nau. The delivery of the checks evidencing the settlement by Tyson's Corner was conditioned upon the release of all liens and the dismissal of all pending suits.

Admittedly, had the Honeywell claim and attachment suit not surfaced at the time it did, and had the holders of the mechanic's

liens released their liens and dismissed their pending court actions, the Tyson's Corner checks would have been delivered and the matters adjusted as agreed.

Appellees contend that it was the mutual exchange of promises and agreements made on February 13, 1970 which constituted the consideration for the extinguishment of the claims of the Bank, as assignee of Nau, and of the mechanic's lienors. They argue that it was the promise and agreement of compromise and settlement, in advance of payment, that all parties sought on February 13, 1970, rather than the performance of such an agreement.

We disagree. The parties contemplated something more than promises and agreements. Tyson's Corner expected performance, i.e. a clearing of the record of liens and legal actions and release of claims as a condition prerequisite to any payment by the property owner.

The proof is not clear and satisfactory that the parties intended or contemplated a novation on February 13, 1970. The meeting held on that day was of a type and kind not uncommon on construction projects. The problem faced there was not a novel one. The construction was over, and the owner had disbursed to the prime contractor all but a small amount due on the contract. There were unpaid bills for labor and materials due by and to sub-contractors. Some had filed mechanic's liens which involved Owner's property. Tyson's Corner owed the general contractor $47,188.91, a sum insufficient to discharge all unpaid claims. It was faced with various claimants demanding that money and asserting priorities among themselves. Tyson's Corner was unwilling to pay unless the parties agreed to whom payment should be made and in what amount. The parties did agree, but before the releases could be executed, liens released of record and suits dismissed, Honeywell's attachment suit was filed, thereby frustrating the arrangement.

As a result of this unforeseen development, Tyson's Corner found itself a co-defendant in an attachment suit, and faced the possibility of a lien being established on its property, or on the sum which it had withheld from Whiting. It then declined to disburse the sum until after the validity and priority of the various claims of the intervenors and Honeywell had been established. It was under no legal obligation to do so by virtue of any agreement that occurred at the February 13, 1970 meeting. Accomplishment of the objective sought

at that meeting had been rendered impossible as to Tyson's Corner by the filing of the attachment suit.

The judgment of the lower court dismissing the writ of attachment and directing payment to the intervenors is reversed. Honeywell's petition for attachment will be reinstated on the docket of the court below for a determination of the validity and priority of the claims of Honeywell, the intervenors, and those persons entitled to any funds in the possession of Tyson's Corner due and owed to Nau, and for such further proceedings as may be indicated, consistent with this opinion.

*Reversed and remanded.*