ALSTON, J.,
concurring, in part, and dissenting, in part.
I concur in the holding and judgment of the majority that the trial court did not err in failing to consider “a reasonable alternative treatment modality (sex offender treatment with an expert forensic psychologist) in lieu of probation revocation coupled with the condition of successfully completing the same program from which [ajppellant was terminated.” The “only limitation placed upon the discretion of the trial court in its determination of what conditions are to be imposed is that a condition be ‘reasonable.’ ” Nuckoles v. Commonwealth, 12 Va.App. 1083, 1086, 407 S.E.2d 355, 356 (1991). The record does not show that the imposition of group sex offender therapy as a condition of probation in this case was unreasonable. Thus, I agree that the trial court did not abuse its discretion in this regard.
However, I respectfully disagree with the majority decision that the trial court did not err in finding appellant in violation of probation based solely on his refusal to admit to rape during sex offender treatment. The majority decision makes a strong and compelling policy statement regarding the expectations of probation in the traditional case. However, this matter is not the traditional case. I believe that the majority result eviscerates a plea made pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), by stripping the plea of its most salient feature from appellant’s *752 perspective, that is, the ability of a defendant to maintain his innocence while simultaneously agreeing to the entry of a guilty conviction without the benefit of a trial on the merits. While I appreciate the critical importance in assuring that probationers adhere to the demands and rigors of probation supervision, in my view, the majority’s conclusion in this particular case is analytically flawed for two important reasons: (1) there is a fundamental inconsistency between appellant’s claim of innocence implicit in his making a plea agreement to the underlying charge pursuant to Alford and a subsequently and unilaterally imposed probation condition requiring that appellant admit to the same charge during sex offender treatment; and (2) the plea agreement in the instant case, which by its very nature is a contract entered into by the Commonwealth and appellant and approved by the trial court, contained no probation condition that the appellant sacrifice his contractual prerogatives under his Alford plea and admit to the underlying charge in sex offender treatment. Therefore, after much careful deliberation and circumspection, I respectfully dissent from that portion of the judgment and would reverse the trial court’s decision revoking appellant’s probation on this specific ground.
I. BACKGROUND
Appellant was indicted in 2007 for a crime that occurred in 1983.[4] In 1984, the Commonwealth destroyed specimens and other evidence obtained through a physical examination of the victim of the crime. Against this backdrop of evidentiary deficiencies, appellant and the Commonwealth conducted plea negotiations and entered into a plea agreement. In the plea agreement, appellant stated, and the government explicitly agreed, that appellant “[did] not admit that [he] committed the crime to which [he was] pleading guilty” and that he “still *753 claim[ed] innocence.” Pursuant to the plea agreement, the trial court agreed to continue sentencing on the charge for five years. In exchange for the plea, appellant agreed to five years of supervised probation and to “be of general good behavior;” have “no contact with [the] victim and her family;” and “[pay] court costs.” At the end of five years and upon appellant’s performance of the conditions, the Commonwealth would request that the trial court vacate the conviction and accept a guilty plea to the lesser-included offense of assault and battery pursuant to Code § 18.2-57. The plea agreement further stated that “[t]here [was] no agreement in connection with this case except for the agreement described [herein].”
At a September 6, 2007 hearing, the trial court conducted a colloquy with appellant. During the colloquy, appellant made an Alford plea. In accord with Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711-12, 23 L.Ed.2d 274 (1969), the trial court found that the plea was made “freely and voluntarily with an understanding of its nature and its consequences.” See James v. Commonwealth, 18 Va.App. 746, 750, 446 S.E.2d 900, 902 (1994) (“Boykin requires that before a trial court may accept a criminal defendant’s guilty plea there must be an affirmative showing that the plea was intelligently and voluntarily made.”). The trial court approved the plea agreement.[5]
On September 20, 2007, the trial court entered an order noting that appellant “protested his innocence” by making an Alford plea and restating the conditions of his probation. In *754 addition, the order stated that appellant must “comply with all the rules and requirements set by the Probation Officer,” including “[any] substance abuse counseling, testing, and/or treatment as prescribed by the Probation Officer.” On October 5, 2007, appellant made a motion to amend the September 20, 2007 order requesting, in part, that “[n]o sex offender treatment be prescribed or required by the Probation Officer.” On October 9, 2007, the trial court denied appellant’s request. Accordingly, appellant entered sex offender therapy but was terminated solely because he refused to admit to the crime.
On June 13, 2008, the trial court conducted a probation revocation hearing. At the hearing, appellant claimed he did not violate the conditions of his probation by failing to admit to the crime. Specifically, he contended the trial court could not find that he violated his probation because the trial court accepted his Alford plea under the plea agreement. In doing so, according to the appellant, the trial court permitted him to maintain his innocence. Furthermore, appellant claimed that requiring him to admit to the crime would be “a breach of the plea agreement, to the extent that specifically in the plea agreement ... [appellant] recite[d], [‘]I do not admit that I committed the crime to which I am pleading guilty.[’]” The trial court disagreed with appellant, and revoked his probation for his failure to admit to the crime and sentenced him on the charge.
II. ANALYSIS
As a preliminary matter, I disagree with the majority’s characterization that an Alford plea is indistinguishable from a guilty plea in all respects. An Alford plea is akin to a plea nolo contendere, that is, a plea that is not “a confession of guilt and has no effect beyond permitting the court to impose sentence in a particular case.” Commonwealth v. Jackson, 255 Va. 552, 555, 499 S.E.2d 276, 278 (1998) (citing Roach v. Commonwealth, 157 Va. 954, 959, 162 S.E. 50, 51 (1932)). Nonetheless, “by entering a plea of nolo contendere, the defendant ‘implies a confession ... of the truth of the charge ... [and] agrees that the court may consider him guilty’ for *755 the purpose of imposing judgment and sentence.” Id. (quoting Honaker v. Howe, 60 Va. (19 Gratt.) 50, 53 (1869)). Practically applied, a plea nolo contendere and an Alford plea are the same. See Alford, 400 U.S. at 37, 91 S.Ct. at 167 (“Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence.... ”).
Originating from early medieval practice, the plea nolo contendere was a means used by a defendant wishing to avoid imprisonment and seeking “to make an end of the matter (finem facere) by offering to pay a sum of money to the king.” Id. at 36 n. 8, 91 S.Ct. at 167 n. 8 (citing 2 F. Pollock & F. Maitland, History of English Law 517 (2d ed.1909)). In making this plea, the defendant did not admit his guilt when he sought such a compromise, but merely “ ‘put himself on the grace of our Lord, the King, and asked that he might be allowed to pay a fine.’ ” Id. (citing Anon., Y.B. Hil. 9 Hen. 6, f. 59, pi. 8 (1431)). Eighteenth century case law distinguished the nolo contendere plea from a jury verdict of guilt, noting that in the former, “the defendant could introduce evidence of innocence in mitigation of punishment, whereas in the latter such evidence was precluded by the finding of actual guilt.” Id. (citing Queen v. Templeman, 1 Salk. 55, 91 Eng. Rep. 54 (K.B.1702)). “Throughout its history, ... the plea nolo contendere has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty....” Id.
Against this historical backdrop, the Alford plea developed as a mechanism whereby “ ‘a defendant maintains innocence while entering a plea of guilty because the defendant concludes that his interests require entry of a guilty plea and the record before the court contains strong evidence of actual guilt.’ ” Perry v. Commonwealth, 33 Va.App. 410, 412, 533 S.E.2d 651, 652-53 (2000) (quoting Cortese v. Black, 838 F.Supp. 485, 492 (D.Colo.1993) (citing Alford, 400 U.S. at 37, 91 S.Ct. at 167)). In making an Alford plea, “ ‘[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he *756 is unwilling or unable to admit his participation in the acts constituting the crime.’ ” Parson v. Carroll, 272 Va. 560, 565, 636 S.E.2d 452, 454-55 (2006) (quoting Alford, 400 U.S. at 37, 91 S.Ct. at 167) (emphasis added).
Based on this holding in Alford, the courts in this Commonwealth in the exercise of their discretion have permitted criminal defendants who wish to avoid the consequences of a trial to plead guilty by conceding that the evidence is sufficient to convict them, while maintaining that they did not participate in the acts constituting the crimes.
Id. at 565-66, 636 S.E.2d at 455 (citations omitted).
Further defining the nature of the Alford plea, the Supreme Court of Virginia stated in Parson that in making such a plea, a defendant “assume[s] a position of law, not a position of fact.” Id. at 566, 636 S.E.2d at 455. In that case, the Court held that Parson’s concession of law in making an Alford plea “did not provide a basis for applying judicial estoppel” in a subsequent defamation action by Parson against the victim. Id. Admittedly, Parson presents a different factual context than the facts herein. The Court’s conclusion, however, is applicable in this case. Parson makes clear that when a defendant tenders an Alford plea, he “concede[s] only that the evidence was sufficient to convict him of the offenses” and “d[oes] not admit as a factual matter that he had participated in the acts constituting the crimes.” Id. Manifest to the Alford plea, therefore, is the defendant’s protestation that he did not commit the acts for which he is charged.
By stark contrast, a guilty plea is founded upon the defendant’s express admission to having committed the crime. It is clear, therefore, that the only conceivable similarity between the guilty plea and the Alford plea is in the nature of their result. Stated another way, an Alford defendant agrees to be treated as if he had made a guilty plea only for purposes of sentencing. Notwithstanding this similarity, the Alford defendant retains, unlike defendants who enter a traditional guilty plea, the enforceable prerogative to maintain his innocence.
*757 Turning to the circumstances of this case, it is clear that appellant tendered his Alford plea because he believed he was innocent. It is not insignificant that the underlying allegations against the appellant were over two decades old and that there were serious evidentiary considerations for both the appellant and the government. Part and parcel of appellant’s plea agreement was his protestation that he was innocent and by written accord, an agreement by the government that appellant would not have to admit that he committed the offense. During the plea colloquy, appellant informed the trial court that he was not “guilty of the crime.” To subsequently force appellant to admit, upon government enforced sanction, to the same crime to which he entered the Alford plea in his sex offender therapy when he vehemently denied committing the crime and contractually was permitted to forego an admission of his guilt in his deal with the government is irreconcilable with his Alford plea and renders meaningless the distinction between an Alford plea and a guilty plea.[6] Moreover, the majority’s conclusion requires appellant to pursue one of several untenable courses: to take a position in sex offender treatment legally inconsistent with his plea; to tell a lie in either the sex offender treatment or during the Boykin colloquy [7]; or to forfeit his right to enter a plea consistent with the requirements of Alford. To be sure, when appellant entered his Alford plea, he “assumed a position of law, not a position of fact,” and he “did not admit as a factual matter that he had participated in the acts constituting the crimes.” Id. Thus, I *758 would hold that appellant could not be required to admit to the crime in sex offender therapy when he tendered an Alford plea.[8]
My disagreement with the majority’s holding on this matter is underscored for a second reason particular to this case: the plea agreement in the instant case, which by its very nature is a contract entered into by the Commonwealth and appellant, and approved by the trial court, contained no probation condition that appellant sacrifice his contractual prerogatives under his Alford plea and admit to the underlying charge in sex offender treatment. “The Court of Appeals and other courts that have considered such agreements have uniformly held that ... a plea agreement[ ] implicate^] a defendant’s due process rights and [is] generally governed by' the law of contracts.” Hood v. Commonwealth, 269 Va. 176, 181, 608 S.E.2d 913, 915-16 (2005). A contract is an agreement between two or more parties requiring acceptance of an offer, as well as valuable consideration. See Montagna v. Holiday Inns, Inc., 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980). Consideration is the price bargained for and paid for the agreement or promise. Id.
Applying these principles to the facts of this case, it is clear that appellant entered into a valid and enforceable contract with the Commonwealth, whereby he maintained he did “not admit that [he] committed the crime” and that he “still claim[ed] innocence.” As a result of the plea, the Commonwealth received the benefit of the bargain by obtaining an Alford plea from appellant and the entry of an order of conviction, by satisfying a significantly lower burden of proof requiring only a “strong factual basis” for the plea, see Alford, 400 U.S. at 38, 91 S.Ct. at 168, and by disposing of the case in an efficient means. Appellant, in turn, received the benefit of maintaining his innocence, having his sentencing continued *759 while he was on probation, and upon satisfying the probation conditions, having his conviction vacated and amended to a guilty plea to the lesser-included offense of assault and battery. The conditions of probation included that he was to “be of general good behavior,” have “no contact with victim and her family,” and pay court costs. The plea agreement further stated, “There is no agreement in connection with this case except for the agreement described in this document.” Thus, following the trial court’s acceptance of the plea agreement, appellant and the Commonwealth were bound by the terms of a valid and enforceable contract.
Here, the government, through the probation officer, added a new condition of probation requiring appellant to admit to the underlying offense during sex offender therapy. To the contrary, the plea agreement specifically stated that the appellant was not admitting that he committed the offense. The position of the government, endorsed by the majority, effectuates a change in the fundamental purpose in the agreement reached between the parties in this matter. To accomplish such an objective, there must have been a clear and definite intention on the part of all concerned to the agreement that such is the purpose of the new agreement. At no point did appellant agree to this additional probation condition and at no point did the parties execute a valid novation to the plea agreement.[9] There is no evidence in the record to support this concept of mutual assent to a change in the agreement the parties reached.
The majority takes great pains to point to the various and arguably significant indicators of appellant’s culpability in the matter, yet criticizes the dissent for pointing out the signifi *760 cant factors in this case which may suggest the incongruence of legal culpability. However, for our purposes, the majority’s references are not relevant to the issue before the Court. The appellant met his part of the bargain by not exercising his constitutional right to challenge the Commonwealth’s case and by acceding to the entry of a guilty conviction. The appellant’s “bargain for in exchange” was the prerogative to maintain his innocence even in light of the conviction.
Appellant’s ability to maintain his innocence was the sine qua non or essence of his agreement with the Commonwealth. By recommending that the trial court revoke his probation for a condition not only not included in the plea agreement, but instead, specifically disclaimed by both parties to the agreement, the Commonwealth gained the benefit of a prerogative it had specifically renounced in the agreement. Thus, I would hold that the trial court erred in revoking appellant’s probation because the plea agreement did not require that appellant admit to the charge during sex offender therapy.[10]
*761 I also disagree with the majority’s assertion that Rule 5A: 12(c) precludes consideration of whether the trial court erred in revoking his probation because the plea agreement did not require that he admit to the charge. Rule 5A:12(c)[11] is a non-jurisdictional rule, and as such, the rule’s invocation “to prevent consideration of [an appeal’s] merits, should not be undertaken without considering whether a party’s failure to adhere strictly to the rule’s requirements is insignificant, or so substantial as to preclude the court’s addressing the merits of the case.” Moore v. Commonwealth, 276 Va. 747, 753, 668 S.E.2d 150,153-54 (2008).
In this case, appellant’s question presented does not explicitly state that the terms of the plea agreement permitting appellant to maintain his innocence was a ground upon which his probation could not be revoked for failure to admit to the crime. Nevertheless, in explicitly making his claim based on his Alford plea, appellant also implicitly included a claim embodied in the plea agreement terms. Indeed, “when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Ignoring the existence of the plea agreement in this case is to disregard an indispensable and prominent aspect of the factual and legal background of the matter.
It is clear that in appellant’s case, he made an Alford plea in conjunction with the terms of the plea agreement in which he maintained his innocence. The plea agreement terms certainly induced him to make his Alford plea, and it cannot be contended that he would have made the Alford plea without *762 entering into the express terms of the plea agreement. Thus, I would conclude that appellant’s failure to explicitly include his claim pertaining to the plea agreement in the question presented was not significant. See Moore, 276 Va. at 753, 668 S.E.2d at 153-54. Accordingly, I would conclude that the issue is not defaulted pursuant to Rule 5A:12(c).
III. CONCLUSION
For these reasons, I disagree with the majority’s holding and judgment that the trial court did not err in finding appellant in violation of probation based solely on his refusal to admit to rape during sex offender treatment. Therefore, I dissent from that portion of the judgment and I would reverse the trial court’s decision revoking appellant’s probation.

. The initial charge for the 1983 crime was dismissed by a nolle prosequi. Later, while investigating a different allegation of rape that involved appellant's sister, the assigned detective re-opened the 1983 case. Consequently, appellant was indicted for a second time pertaining to the 1983 crime in 2007.

. Significantly, the Commonwealth did not agree to a "plea and recommendation” pursuant to Rule 3A:8, a rule substantially equivalent to Federal Rule of Criminal Procedure 11. In circumstances involving a "plea and recommendation,” the Commonwealth agrees to make a recommendation, or not to oppose the defendant's request for a particular sentence, with the understanding that the recommendation or request is not binding on the trial court. See Rule 3A:8(c)(l)(B), 3A:8(c)(2): see also United States v. Iaquinta, 719 F.2d 83, 85 (4th Cir.1983) (explaining that in the context of a Fed.R.Crim.P. 11(e)(1)(B) plea agreement, the U.S. Attorney simply agrees to make sentencing recommendations with the understanding that such recommendations are not binding on the district court). By contrast, the trial court in this case approved and accepted a plea agreement, a disposition binding the trial court to the terms of the plea agreement.

. In dicta, we have alluded to the inherent contradiction apparent in requiring an Alford defendant to assume responsibility for a crime while he asserts his innocence. See Smith v. Commonwealth, 27 Va.App. 357, 364, 499 S.E.2d 11, 14 (1998) (holding that the trial court did not err in considering an Alford defendant's lack of remorse as one factor in sentencing, but indicating that the Court’s holding did not "require him to assume responsibility for crimes while asserting his innocence”).

. See James v. Commonwealth, 18 Va.App. 746, 750, 446 S.E.2d 900, 902 (1994) (“Boykin [v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969),] requires that before a trial court may accept a criminal defendant's guilty plea there must be an affirmative showing that the plea was intelligently and voluntarily made.”).

. Indeed, appellant was not, and could not be, aware that his probation would be revoked for failure to admit to the crime when he entered into the plea agreement. Appellant quite reasonably expected that he and the Commonwealth would be bound by the terms of the plea agreement.

. "[A] novation is defined as a mutual agreement among all parties concerned for discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another.” Honeywell, Inc. v. Elliott, 213 Va. 86, 89-90, 189 S.E.2d 331, 334 (1972) (citations omitted). “To effect a novation there must be a clear and definite intention on the part of all concerned that such [a change] is the purpose of the [new] agreement, for it is a well settled principle that novation is never to be presumed.” Id.

. Furthermore, I have grave concerns about the circumstances surrounding the plea agreement in this case. The probation officer added a condition to appellant's probation that was in opposition to the plea agreement terms approved by the trial court. Essentially, the probation officer, who was an agent of the executive branch, acted in a judicial capacity by requiring that appellant admit to the crime, a probation condition inconsistent with the terms of the plea agreement. The result suggested by this dissent avoids what could be considered the more significant question as to whether the probation officer violated principles of separation of powers contained in the Constitution of Virginia. See Va. Const, art. I, § 5 and art. Ill, § 1.
Contrary to the majority’s assertion, my concern pertaining to the separation of powers issue in no way suggests that Code 19.2-303.3(B) is unconstitutional. See generally Code § 19.2-303.3(B) (permitting trial courts to direct criminal defendants to "abide by any additional requirements of supervision imposed or established by the local community-based probation services agency during the period of probation supervision”); Perkins v. Commonwealth, 12 Va.App. 7, 14, 402 S.E.2d 229, 233 (1991) ("In assessing the constitutionality of a statute, we must presume that the legislative action is valid."). Certainly, a probation officer has “supervisory responsibility for [a probationer’s] conduct and treatment during the course of his probation” and is "charged by law with defining a probationer's permissible or impermissible conduct.” Miller v. Commonwealth, 25 Va.App. 727, 743-45, 492 S.E.2d 482, 491 (1997). I disagree, however, that a probation officer may impose a *761 condition requiring a probationer to admit to a crime and thereby defeat the very core of the plea agreement the probationer entered into with the Commonwealth and approved by the trial court, which permitted him to maintain his innocence.

. Rule 5A: 12(c) provides, in pertinent part, that ‘‘[o]nly questions presented in the petition for appeal will be noticed by the Court of Appeals.”