# CIRCUIT COURT OF BOTETOURT COUNTY

Nixon Properties, L.L.C.

v.

Hobert U. Graham, Jr.

September 13, 2010

Case No. CL10000024-00

By JUDGE VICTOR V. LUDWIG

Nixon Properties, L.L.C. (Nixon), entered into a commercial lease agreement (the Individual Agreement) with Hobert U. Graham, Jr. The Individual Agreement contemplated that Graham would lease certain property and operate a commercial business called Nannie's Market, located in Troutville, Virginia, with an option to purchase both the property and the business on the conditions described in the Individual Agreement. Graham was to pay Nixon $2,000 per month, of which $500 was allocated as rent and $1,500 was allocated as a non-refundable deposit on the option to buy.

On January 14, 2010, Nixon filed a motion for judgment against Graham for damages resulting from an alleged breach of the Individual Agreement. Graham answered the Complaint and filed a Special Plea asking the Court to dismiss him from the action, arguing that the Individual Agreement upon which the Complaint was founded is void and was superseded by an agreement (the Corporate Agreement) between Nixon and Hobert Trading Co. (the Corporation). Nixon moved the Court for summary judgment to dismiss the Special Plea.

The Court has reviewed the briefs of each party on this motion and heard oral arguments on August 19, 2010. For the reasons set forth below, the Court denies the Motion for Summary Judgment.

*Standard of Review*

The Supreme Court of Virginia has cautioned that summary judgment is an "extreme remedy" and is available only when there are no material facts genuinely in dispute. *See, e.g., Parson v. Carroll*, 272 Va. 560, 564 (2006); *see also* Va. Sup. Ct. R. 3:20 (2010). A summary judgment is appropriate in those cases where the dispute involves only pure questions of law. *See, e.g., Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 5 (1954) (noting that summary judgment "applies only to cases in which no trial is necessary because no evidence could affect the result"). Furthermore, in considering a motion for summary judgment, the court "must adopt those inferences from the facts that are most favorable to the nonmoving party, 'unless the inferences are strained, forced, or contrary to reason'." *Carson v. LeBlanc*, 245 Va. 135, 139–40 (1993) (quoting *Bloodworth v. Ellis*, 221 Va. 18, 23 (1980)). Accordingly, on this motion, the Court will draw all reasonable inferences in favor of the non-moving party Defendant Graham.

*Factual Background*

I recognize that Nixon has argued that the Court cannot consider much of the information contained in this section because it can be presented only as parol evidence. However, for the reasons articulated in this letter, the Court finds that it is appropriate to consider that evidence.

According to Graham, shortly after executing the Agreement, both parties learned that the Virginia Department of Alcoholic Beverage Control (VABC) would not issue a license for the distribution of alcohol to Graham as an individual; he asserted that such licenses are issued only to legal entities. Graham has offered no authority for that assertion, but that is not required at this stage of the proceeding. The viability of the business so depended upon the acquisition of the VABC license that Graham created the Corporation, with himself as its president. Graham alleged that Nixon and he, as president of the Corporation, then orally disavowed and terminated the Individual Agreement and executed the Corporate Agreement that was identical in every relevant detail to the Individual Agreement except that (a) the Corporation was the lessee/purchaser under the Corporate Agreement and (b) there was a modest reallocation of the purchase price between the real estate and inventory. Graham asserted in his Special Plea that the Corporate Agreement was executed many weeks after the Individual Agreement, even though both documents are dated February 23, 2009.

*Analysis*

The Special Plea asserts that no valid contract exists between Nixon and Graham; therefore, Graham is not a proper defendant and must

be dismissed. Nixon argues that neither agreement clearly expressed an intent to effect a novation, and that, absent such a clear expression, the two instruments must be read as a single, integrated agreement that would identify both Graham and the Corporation as lessees/purchasers. By Nixon's reasoning, Graham's Special Plea must be rejected because he is properly before the Court as a defendant.

Neither document indicates that one was intended to replace the other. Nixon correctly notes that "[i]n order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed." *J. M. Turner & Co. v. Delaney*, 211 Va. 168, 172 (1970) (quoting *Arlington Towers Land Corp. v. McFarland*, 203 Va. 387, 392 (1962)). Relying on *Arlington Towers*, 203 Va. at 391, in which the Court observed that "[t]he best way . . . to have a contract show on its face what was intended is to write it in the contract," Nixon asks why the parties did not, if it was their intention to form a new agreement, clearly express that intention in the Corporate Agreement.

Certainly it would have behooved Graham to memorialize the termination of the Individual Agreement, but his failure to do so is not fatal to his Special Plea and does not automatically lead to the conclusion that a novation could not have been effected. In *Honeywell, Inc. v. Elliott*, 213 Va. 86, 89–90 (1972), the Supreme Court of Virginia held:

> To establish novation the proof must be clear and satisfactory. Its essential requisites are a previous valid obligation, the agreement of all parties to the new contract, the extinguishment of the old contract, and the validity of the new contract. If any of these essentials be absent there can be no novation.

Graham has satisfactorily pleaded all of these required elements. Nixon, on the other hand, does not even argue that these elements are not present; he argues only that the face of the documents themselves do not establish all of these elements. Nixon artfully (but inaccurately) seeks to convert the standard (which requires an expression of clear and definite intention of the parties to effect a novation) into an inflexible rule that rejects novation if the intent to novate is not expressly set out on the face of the agreement(s).

The law of Virginia, however, does not require that proof of novation be established on such an exclusive basis or that extrinsic evidence may not be considered to establish the requisite intent to effect novation. *See Dillenberg v. Thott*, 217 Va. 433, 436 (1976) ("[W]hether that intention [to effect novation] existed is to be determined from all the facts and circumstances incident to the new agreement.") (citing *Mitchell v. Cox*, 189 Va. 236, 243 (1949)). In this case, the Court was addressing successive oral

contracts (the latter of which resulted in the execution of mutual wills), neither of which would possibly meet Nixon's proposed requirements. Moreover, the Court made it clear that "[w]hile it is true there is no direct testimony that there was a definite agreement to effect a novation, the acts and conduct of the parties show that was their intent." *Id.* at 436. One must infer that the Court would have accepted "direct testimony" (by definition, parol evidence), but, lacking that, even the parties' acts and conduct could only be proven by parol evidence. In *Honeywell, Inc.*, 213 Va. at 89 (1972), the Court noted: "We are unable to find evidence in the record before us that it was ever the intention of the parties" to effect a novation. To the extent that Nixon argues that an intent to effect novation must be explicitly expressed on the face of the agreement, *Honeywell* refutes this view and contemplates that evidence of an intent to effect novation may be ascertained outside the four corners of the contract(s) at issue.

Nixon also directs the Court to *Arlington Towers* as authority to reject parol evidence in support of intent to novate. In that case, the Supreme Court of Virginia considered whether a corporation's contract to employ a consultant was novated by a subsequent contract between the consultant and the purchaser of the corporation's capital stock. A superficial reading of that case supports Nixon's position. In *Arlington Towers*, the plaintiff (seeking to enforce the earlier contract) argued that the subsequent contract on its face did not constitute a novation, that the trial court erred in admitting parol evidence to explain that contract or to show a mutual termination of the prior contract, and that it erred in refusing to grant the plaintiff summary judgment on the issue.

*Arlington Towers* is distinguishable, however. In that case, the subsequent agreement incorporated by reference the initial agreement with the defendant. *Arlington Towers*, 203 Va. at 392. Under those circumstances, the Court concluded that the subsequent agreement was "more an affirmance of the defendant's obligation to the plaintiff than a novation of that obligation. . . ." *Id.* The Court concluded that, "on the basis of the written agreements alone, the plaintiff would have been entitled to summary judgment against the defendant." *Id.*

Hence, *Arlington Towers* suggests that, under its factual circumstance, where the initial agreement is incorporated by reference into the subsequent agreement, the subsequent agreement expressed a clear intent *not* to effect a novation. The Court determined that the contract expressed an intent to honor the initial agreement, not that it failed to express an intent to novate. As to the defendant's parol evidence offered to show novation, the Court merely deferred to the trial court's finding that the evidence "did not carry the burden of proof." *Id.* at 393. The Court did not conclude that the evidence was inadmissible; rather, it observed (in the subjunctive) that, "if some of the testimony was inadmissible, the error was harmless and plaintiff's assignment of cross-error need not be discussed." *Id.*

Some other jurisdictions have held that extrinsic evidence is appropriate to support or rebut a claim of novation. *See Edward Petry & Co. v. Greater Huntington Radio Corp.*, 245 F. Supp. 963, 968 (S.D. W. Va. 1965) ("[A]cceptance of the terms of a novation ordinarily does not need to be shown by express words to that effect, but the same may be implied from the facts and circumstances attending the transaction and conduct of the parties thereafter."); *Lonie v. Icenhower*, 2003 U.S. Dist. LEXIS 27808 (D. Cal. 2003) ("To the extent . . . statements address the issue of novation, the Parol Evidence Rule is not applicable and such statements may be properly admitted."); *MacQuoid v. West Va. Newspaper Publishing Co.*, 105 W. Va. 20, 24 (1928) ("[N]ovation may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter."); *Meadows v. Lee*, 175 Cal. App. 3d 475, 221 Cal. Rptr. 22 (1985) (holding that extrinsic evidence may be used to prove the intent of original contracting parties where a third-party plaintiff claims that a novation has occurred between those contracting parties); *Rainier Holdings, Inc. v. Tatum*, 622 S.E.2d 86, 88 (Ga. App. 2005) ("parol evidence is admissible when determining whether a novation has occurred").

Even if the Court accepts Nixon's argument that an intent to effect novation must be expressly set out on the face of the agreement, it still may not prevail on summary judgment. Nixon urges that, if there is no novation, both contracts must be "merged" and treated as a single document: "[W] hen the two contracts are read together as a single document and the presumption against novation is factored in, the only logical reading is that the parties intended to make the Company a party to the contract, as well as Graham." Brief in Support of Summary Judgment, at 3. Moreover, Nixon argues that summary judgment is appropriate because the contracts are free from ambiguity: "Whether the Court construes the documents as one contract or two, they are plain and unambiguous with respect to the parties whom they bind." *Id.* at 4. It follows, Nixon argues, that the Court is not entitled to consider extrinsic evidence in aid of their interpretation. *See, e.g., Berry v. Kinder*, 225 Va. 201, 208 (1983) ("Where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.").

Although Nixon's interpretation of the Agreements, read together, may be correct, it is not "the only logical reading." It is true that the Supreme Court has repeatedly held that, "where parties have entered into more than one document relating to a business transaction, 'these documents should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others'." *J. M. Turner*, 211 Va. at 171. In *J. M. Turner*, the Court decided that two letters formed an integrated contract between the parties and rejected the trial court's finding that the second letter was a novation. *Id.* at 171–72. In that case, the two letters, or "contracts," were not at cross-purposes. The first addressed an obligation

to furnish a certain amount of material at a certain price. The second established a certain price for that portion of the material picked up by the buyer in lieu of being delivered by the seller. Thus, the terms of the second letter were not inconsistent with those of the first. Similarly, in *Beard v. Poe*, 211 Va. 626 (1971), the Supreme Court noted that "[t]he provisions of the [agreements at issue] do not conflict" and ultimately determined that no novation had been effected. *Id.* at 629–30.

These cases are inapposite because the principle they articulate cannot guide the interpretation of multiple agreements when, as here, they are arguably at cross-purposes. The present case involves two agreements that are facially inconsistent. Arguably, the "merged" contract creates irreconcilable obligations on the part of the lessor because Nixon cannot independently lease the same property with nearly identical options to purchase, under nearly identical terms, to two distinct parties. Confronted with at least two plausible interpretations, the only possible mechanism to reconcile the Individual Agreement and the Corporate Agreement is to hear parol evidence to determine what the parties' intentions were: to novate the former by the latter, to have co-lessees/purchasers, or to effect whatever other possible business arrangements the parties may have contemplated.

Nixon also relies on *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142 (2001), to support his interpretation. Once again, *Countryside* is distinguishable because, unlike the present case, the multiple agreements in that case each served separate and distinct purposes in connection with the transaction and were entirely consistent with one another. More importantly, the Court identified five factors relevant in deciding whether to interpret multiple instruments as one agreement. The factors are: (1) the agreements were executed at the same time; (2) all parties knew about the agreements; (3) the agreements were executed as part of a single transaction to accomplish an agreed purpose; (4) the agreements all had to be signed together or there would not have been an agreement; and (5) some of the agreements contained explicit references to the other agreements. *Countryside*, 261 Va. at 152–53. In this case, some or all of these five factors are in dispute. Therefore, *Countryside* underscores that summary judgment in this case is inappropriate.

Based on the above cited authority under this set of facts, the Court rejects Nixon's argument that the Special Plea must be denied on the grounds that the agreements at issue fail to express a clear intention to effect novation. The Court also rejects Nixon's argument that the instruments are free from ambiguity. As I have already discussed, these two agreements, taken together, are arguably irreconcilable and, certainly, by their very existence, ambiguous. See *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 633 (2002) (finding that "different interpretations and inherent conflicts demonstrate ambiguity"). The Court is entitled to consider extrinsic evidence regarding Graham's claim that the parties orally

agreed to terminate the initial agreement. Whether the parties struck such an agreement is a material fact at issue, and summary judgment is improper.

## Conclusion

For the foregoing reasons, Plaintiff Nixon's motion for summary judgment is denied. I also will grant Mr. Creekmore's motion to add Hobert Trading Co. as a defendant in this matter pursuant to Va. Sup. Ct. Rule 3:12. I note that this decision does not have the effect of sustaining the Special Plea. On the contrary, it merely permits the parties to argue the effect of any negotiations or agreements by the parties which were subsequent to the execution of the Individual Agreement.